# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | |
|---|---|
| In re: | |
| **GALLERIA 2425 OWNER LLC,** | **Case No. 23-34815** <br> **Chapter 11** |
| **Debtor** | |

## DEBTOR'S RESPONSE TO MOTION OF NATIONAL BANK OF KUWAIT, S.A.K.P., NEW YORK BRANCH, TO CONVERT CASE TO A CHAPTER 7 CASE

**TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:**

Galleria 2425 Owner LLC (the "Debtor"), debtor-in-possession in the above-captioned bankruptcy case, files this Response to the Motion of the National Bank of Kuwait, S.A.K.P., New York Branch ("NBK") to Convert Case to a Chapter 7 case [Doc#72] (the "Motion") and in support of which it would respectfully show as follows:

### I. INTRODUCTION

1.    NBK's Motion should be rejected because the bankruptcy case was filed in good faith. The Debtor and NBK have been engaged in litigation and the Debtor contends that NBK has breached the Settlement Agreement between the Debtor and NBK by interfering with the Debtor's rights to lease and sell the property. Further, the Debtor can and will file a confirmable plan.

### II. THE BANKRUPTCY CASE WAS FILED IN GOOD FAITH AND ACTIONS OF NBK HAVE NOT BEEN IN GOOD FAITH

2.    The Debtor filed its bankruptcy case in good faith and to preserve its asset, the commercial office building at 2425 West Loop South, Houston, Texas (the "Property").

3.      The Debtor is not a serial filer.  The Debtor filed this case to continue to preserve an asset of value and to avoid the wrongful actions of NBK.  As explained below, NBK breached a settlement agreement and continues to attempt to foreclose on the Property to wrongfully obtain ownership of the Property.

4.      Fifth Circuit has offered guidance on how courts should approach the good faith inquiry:

> Determining whether the debtor's filing for relief is in good faith depends largely upon the bankruptcy court's on-the-spot evaluation of the <u>debtor's financial condition</u>, <u>motives</u>, and the <u>local financial realities</u>. Findings of lack of good faith in proceedings based on §§ 362(d) or 1112(b) have been predicated on certain recurring but non-exclusive patterns, and they are based on a conglomerate of factors rather than on any single datum.

*In re NRA of Am.*, 628 B.R. 262, 280 (Bankr. N.D. Tex. 2021) quoting from *In re Little Creek Dev. Co.*, 779 F.2d 1068, 1072 (5th Cir. 1986) (emphasis added). The Circuit enumerates a number of factors a court may consider when making a determination about the case (which will be discussed below), but these factors are relevant to the extent they assist in the determination of whether there is a "going concern to preserve" and "hope of rehabilitation" among other goals. *Little Creek*, 779 F.2d, at 1073.

5.      Most of the factors describe nearly every single single-asset real estate case, and if these factors were dispositive, almost no single-asset case could be confirmed. "These facts are indicative of hundreds, if not thousands, of bankruptcy cases, and are hallmarks of 'single asset real estate companies,' which are now defined and accepted types of debtor entities post-Bankruptcy Reform Act of 1994, which itself was eight years post-*Little Creek*. *In re JSAA Realty, LLC*, No. 20-32504, 2022 Bankr. LEXIS 464, at *29 (Bankr. N.D. Tex. Feb. 24, 2022). See also *In re Humble Place Joint Venture*, 936 F.2d 814, 818 (5th Cir. 1991) ("There are several instances in which even one-asset real estate ventures would invoke Chapter 11 in good faith: the asset may

be an operating business.") Therefore, rather than relying mechanically on the *Little Creek* factors the court should take a broader view involving the Debtor's motives, financial condition, and the local financial realities as directed by the Circuit.

6.      The Debtor's purpose in filing the case was not to delay or frustrate creditors, but to (1) preserve the value of its main asset, (2) continue operations, (3) address its dispute with NBK, and (4) restructure its debts.

7.      The Debtor's primary asset is a Class A office building located at 2425 West Loop South, Houston, Texas 77027(the "Property").  As an office building, the Property was greatly affected by the Covid pandemic—indeed, during the pandemic, one of the Property's largest tenants filed for bankruptcy and ultimately rejected its lease at the Property, leading to significant vacancies.  Since then, the Debtor has worked hard to increase the occupancy of the Property, and the Property currently has a large number of commercial tenants from which Debtor derives its income.

8.      NBK structured and made a loan to the Debtor to acquire the Property from another entity named 2425 WL, LLC ("2425 WL").  Ali Choudhri ("Choudhri") was an owner in 2425 WL. The NBK loan was for an initial amount of $51,675,000 (the "NBK Loan").  When the NBK Loan was set up, the loan had an interest reserve. The interest reserve was set up if there was a default by an anchor tenant.  The reserve funds should have lasted approximately 2 years.  However, when the Debtor deposed NBK as to the application of the reserve funds, the response was that the reserve fund was handled in Kuwait and the person at the deposition could not explain the application by NBK of the reserve funds.  NBK has never provided explanations as to the use of the reserve funds. The Debtor contends if the reserve funds had been properly applied, no payment defaults would have existed.

9.      When the NBK Loan was originated, NBK was a principal actor in the setup of the

loan. The structure was "suggested" by NBK. After the NBK Loan was set up in 2018, Azeemeh Zaheer ("Zaheer") was the managing member of Naissance Capital Real Estate, LLC ("Naissance CRE"). At that time and still today, the Debtor is owned 100% by Galleria 2425 JV, LLC ("Galleria 2425 JV"). The other member of Galleria 2425 JV was Galleria West Loop Investments II, LLC ("Galleria WL II"). Until January 18, 2021, Naissance CRE was the managing member of Galleria 2425 JV.

10. On or about May 24, 2018, an amendment to the Galleria 2425 JV was executed. See Exhibit 1. The amendment was an agreement to allow Galleria WL II to become the managing member of Galleria 2425 JV as set forth in section 2(b). See Exhibit 1.

11. On or about January 18, 2021, Naissance CRE (by Zaheer) and Galleria 2425 WL II (by Choudhri) executed an amendment to make Galleria WL II the managing member of Galleria JV. Galleria JV is still the 100% owner and manager of the Debtor. See Exhibit 1B.

12. Even though Zaheer voluntarily removed herself from management, NBK did not want her to remove herself with her control of the Debtor until NBK could find a "suitable replacement." See Exhibit 2. In other words, NBK wanted to have "control" or apparently input on control of the Debtor if Zaheer was no longer the controlling person.

13. Prior to amendments to the agreements between NBK and the Debtor, NBK required written consent for any leases. In approximately 2019, the Debtor presented a lease proposal with Sonder. The Sonder lease was orally approved by NBK. The Sonder lease was for approximately three floors of space. The Sonder lease was beneficial to the Debtor and NBK. Based on the oral representation to the Debtor by NBK, the Debtor signed the Sonder lease. Around the same time, Carter with NBK notified the appraiser that the Sonder lease should be considered in the valuation. See Exhibit 3, email from NBK (Carter) to the appraiser for NBK in January of 2019. If NBK

wanted the lease used for the appraisal, NBK presumably had approved the lease. However, 3 months later on March 22, 2019, NBK notified the Debtor that it was in default for signing the Sonder lease. See Exhibit 4 for a presentation involving NBK and the Sonder lease. See page 14 of Exhibit 4 for the default notice on the Sonder lease.

14.    NBK had several emails where it admitted that it knew that Choudhri was an effective owner of the Debtor in 2019 and 2020. See Exhibit 5 an email on August 15, 2020. However, in approximately March of 2021, NBK sent a notice stating that NBK had just become aware of the fact that Choudhri was the effective owner of the Debtor and that NBK was not aware Choudhri was effective owner when it made the NBK Loan. The false report was done when Carter with NBK knew that Choudhri was an effective owner of the Debtor. Carter later testified that he had known Choudhri was an effective owner when the report was filed. NBK filed a motion in state court to attempt to strike the testimony of Carter but such motion was denied except for limited references.

15.    Prior to April of 2021, NBK appears to have been involved in a scheme to remove Choudhri as the equity owner. Carter send an email dated April 16, 2021, and stated, "3. Mezz Investors will proceed to gain control of the managing member of the Mezz Borrower which owns the property by filing a UCC foreclosure on the pledges of shares of the Mezz Borrower and removing the equity owner, Ali Choudhri." See Exhibit 5A.

16.    Prior to the bankruptcy, as detailed in its motion, NBK and the Debtor entered into a Settlement Agreement. The Debtor contends that NBK breached the Settlement Agreement by, *inter alia*, unreasonably withholding consent for various leases and sale opportunities for the Property so that NBK and/or its principals could foreclose on the Property for their own benefit. The Debtor is investigating and intends to continue to investigate and assert various claims against NBK, including claims for lender liability and tortious interference, based upon its actions and

dealings with the Debtor and other parties.

17. For example, NBK was not to post the Property for foreclosure in 2023. The posting "tainted" the buyer pool. The state court judge agreed that NBK wrongfully posted the Property for foreclosure and provided additional time to the Debtor.

18. In July of 2023, the Debtor had a buyer and had the ability to complete the payoff of the NBK debt. However, NBK did not provide the documents to allow the payoff to be completed.

19. Since the dismissal of the last case, the Debtor has several tenants that have moved forward to lease significant space in the Property. One credit tenant is to lease a full floor. Another credit tenant is to lease two full floors. Debtor is hopeful to sign leases within the next sixty (60) days. Debtor has approximately 5 other pending leases for additional space. The management of the Debtor has been able to lease space in a very difficult market. These leases would place the Property at approximately a 70% or more occupancy rate.

20. NBK alleges the debt on the Property to be over $60,000,000. The Debtor disagrees. The Debtor further contends that NBK owes the Debtor significant amounts in damages due to the wrongful actions of NBK. NBK's valuation of the Property is approximately $18,600,000.[1]

21. NBK is not the Debtor's only creditor; the Debtor has a number of unsecured creditors who stand to get something if the Debtor confirms a plan, but who will get nothing if NBK forecloses on the property. *See* Debtor's list of Top 20 Unsecured Creditors [Doc#70], filed December 23, 2023. Contrary to NBK's assertions, the Debtor is confident it can present a confirmable plan, which will include new equity contributions sufficient to restructure its debt and obligations in accordance with the Bankruptcy Code.

---

[1] See document 33-2 in prior case. The Declaration of Michael Carter for NBK in which he declared under penalty of perjury that the appraised value of the Property per the Cushman and Wakefield appraisal dated as of July 5, 2023 is $18,600,000.

DEBTOR'S RESPONSE TO MOTION TO CONVERT TO A CHAPTER 7 CASE

22.     The amount of NBK's claim, which is currently disputed, will be decided by the Court. The Debtor's forthcoming plan will provide sufficient treatment for NBK and the Debtor is confident that it will have an impaired consenting class to confirm a cramdown plan.

23.     On December 6, 2023, Zaheer filed a Notice of Removal of the state court case of *Naissance Galleria, LLC vs. Azeemeh Zaheer*, Cause 2023-43755 (the "Removed Case" or the "State Court Case").

24.     Naissance and the Debtor contend that the removal was improper and the Removed Case should be remanded back to state court promptly. This court has remanded the case back to state court.

25.     The Debtor was in a prior bankruptcy case at 23-60036 (the "Prior Case"). In the Prior Case, Naissance on October 31, 2023, filed an emergency motion at docket #102 (the "Naissance Motion") effectively seeking to pursue the State Court Case in state court. The Naissance Motion requested that the bankruptcy court confirm that the automatic stay was not in effect to allow Naissance to pursue the exercise of remedies against Galleria 2425 JV, LLC ("JV"), or finding that, based on a Temporary Injunction issued in the State Court Case, that Zaheer is permitted to control Naissance. Naissance argued that Zaheer was legally entitled to control and direct Naissance.

26.     NBK has stated in the Motion to Convert that the Debtor is "still managed by an ineffective team led by its principal owner, Mr. Ali Choudhri." The management team includes Jetall Compaies, Inc. ("Jetall"). The comment appears to allude to the management by Jetall and Choudhri. However, when the NBK Loan was made, NBK made multiple positive comments about Jetall and its owner on leasing, renting and management activities. See, Exhibit 6, pages 3, 6, 8, 9 and 16.[2] Jetall had leased the Property to a 91.5% occupancy at the time. Jetall was owned

---

[2] The document is an internal NBK memorandum obtained by the Debtor and others in depositions in state court. The
DEBTOR'S RESPONSE TO MOTION TO CONVERT TO A CHAPTER 7 CASE

and managed by Choudhri and also managed by Dward Darjean ("Darjean") in 2018 and such management continues to this day.

27. Interestingly, in the state court on December 6, 2023, the Removed Case was set to hear arguments in the Removed Case on substantially or virtually identical issues that Naissance (and Zaheer) raised in the Naissance Motion before this Court on October 31, 2023.

28. The projections made in the last case are "on track," contrary to allegations in the motion to convert. The projected rental income is currently being offset by tenant improvement and other allowances but will begin to be paid in the next several months. The Debtor has new leases in progress for one floor and a separate proposal for 2 floor. The Debtor estimates that the new leases should be in place in approximately 60 days. The Debtor also have approximately five (5) other leases that are significantly far along and should be done soon for approximately another 40,000 feet.

29. Contrary to the allegations of NBK, Jetall is paying rent and has been paying rent. See Exhibit 7.

30. The conversion of this case to a chapter 7 will only benefit one creditor – NBK. NBK has claimed a lien in excess of $60,000,000. NBK has alleged the value of the Property is approximately $18,500,000. A chapter 7 trustee, in all likelihood, abandon the Property to NBK. In such case, NBK will be the only creditor to benefit from the conversion.

31. Further if this case were converted, the discovery into the actions of NBK would not be controlled by the Debtor but a chapter 7 trustee. By requesting conversion, NBK is attempting to shield itself from further discovery into its wrongful actions. The Debtor will be seeking the depositions of Mona Dajani, an attorney with counsel for NBK, Michael Carter, and

---

document contains useful information to observe the change in the review of Jetall and the management of the Debtor when the NBK Loan was made to the status today. However, the management of Jetall is still the same.

others who apparently participated in the actions of NBK to attempt to take over control of the Property and others to investigate the actions of NBK.

32.     Contrary to the allegations in the Motion to Convert, the case was clearly filed in good faith, serves a valid purpose which benefits all creditors and interest holders, and the motion should be denied.

### III.  DAVID TANG AND THE FORGERY ALLEGATIONS

33.     David Tang ("Tang") is presently representing Zaheer in the 80th Judicial District Court against, essentially Choudhri.   In his pleadings, Tang has accused Choudhri of forging a document.  Tang alleges the forgery not because there is any truth to it (which there is not), but because he appears to be experienced in making forgery allegations.

34.     An example of this occurred recently in 2019 in a dispute between Grove Enterprises, Inc. owned by a man named Harold Polk ("Polk"), and Dalio Holdings I, LLC, owned essentially, by Choudhri.

35.     Polk, as the principal of Grover Enterprises, Inc., had executed a promissory note for $3.5 million and Security Agreements involved with a sale from Dalio.  Polk admitted to signing these documents in sworn testimony in a Temporary Injunction (see exhibit 8) hearing conducted September 30, 2019:

Q.    And you signed a three-and-a-half million
    dollar note to Dalio, correct?

        A.    Correct.

        Q.    And that's Exhibit 8.  Look at Exhibit 8.  I
    know it's a lot of flipping around.

        A.    And what page is that?

        Q.    It's Exhibit 8.  Just find the 8 tab.  And
    Exhibit 8 is a note that you signed, correct?

        A.    Correct.

        Q.    And it's in three -- the amount is
    approximately 3.5 million, correct?

        A.    But it doesn't have a date on here.

        Q.    Yeah, but if you look at the last page where
    it's signed, it's notarized on January the 18th, 2019,
    on the last page.

                    Do you see that?

        A.    This is January.

        Q.    Look at the top of the last page.  We're under
    "Acknowledgments, State of Texas, County of Harris, on
    this, the --" 17th is crossed out, and it says 18th.

        A.    Correct.

        Q.    Okay.  So Exhibit 8 is Dalio's promissory note
    for 3.5 million.  And is that your signature on the
    proceeding page?

        A.    Yes.

36. At this hearing and at that point in those proceedings, Polk was represented by Mark A. Junell. Subsequently, Polk hired Tang to represent him. After employing Tang, then testimony of Mr. Polk changed. After Tang begin his representation of Polk, Polk had a change in positions and now apparently takes the position that he did not sign the promissory note and security agreements because his signatures were forged. For unknown reasons, the documents became forgeries after Tang started representing Polk.

37. Even more interesting, the person Tang accused of carrying out these forgeries was his present client, Zaheer. On July 19, 2020, Tang identified Zaheer as a possible forger of documents. In a pleading filed that day (see Exhibit 9), Tang represented to the Court:

> Based on information and belief, DALIO, through its owner/agent(s) Azeemeh Zaheer, Mirza Agha, Zeke Agha, and/or Brad Parker have forged the promissory note and caused to be introduced into evidence fake evidence.

38. This is the same Zaheer that Tang now represents. Once again, Tang has asserted forgery and against Choudhri. This is also the same Zaheer who sent numerous emails before signing the document to which Choudhri allegedly forged the signature of Zaheer. The emails from Zaheer stated she was going to sign the document and acknowledged to numerous persons after she had signed the document after she had actually signed it.

39. On September 22, 2021, Judge Lopez (see exhibit 10) warned all parties, including Tang:

```
16         If there are allegations -- unfounded allegations
17  of fraud and they're just being thrown around, then that's
18  going to get addressed as well.  I think I'm giving everyone
```

36. Rather than heeding Judge Lopez's warning, Tang took his forgery argument to

Harris County's 80th Judicial District Court. On December 6, 2023, Tang and his client, Zaheer, were scheduled for a hearing on the alleged forged document. However, Tang removed the state case to Bankruptcy Court one hour before the matter could be heard.

 **202343755 - NAISSANCE GALLERIA LLC vs. ZAHEER, AZEEMAH (Court 080)**

| Date | Court | Post Jdgm | Docket Type | Reason/ Appearance Court | Results/ Setting Type | Comments |
|------|-------|-----------|-------------|--------------------------|----------------------|----------|
| 12/06/2023 10:30 AM | 080 | | Law Day Docket In Person | TEMPORARY INJUNCTION (MOTION FOR) | Passed | NOTICE OF REMOVAL FILED 12.6 |

| Filing Details | |
|----------------|---|
| Case Number | 202343755 |
| Case Style | NAISSANCE GALLERIA LLC v ZAHEER, AZEEMAH |
| Date/Time Submitted | 12/6/2023 9:21 AM CST |
| Filing Type | Notice |
| Filing Description | Notice of Removal |
| Filed By | DAvid Tang |

40.    Any allegation of forgery should be taken with significant concern by a court. Tang's continued allegations of forgery in multiple cases raises significant and serious concerns.

### III. SPECIFIC RESPONSES

41.    Debtor admits the allegations in paragraph 1.

42.    Debtor denies in paragraph 2 that this case should be converted to a chapter 7 case.

43.    Debtor denies the allegations in paragraph 3. In all likelihood, creditors, other than NBK, will receive nothing upon a conversion. The Debtor denies that nothing changed since dismissal.

44.    Debtor denies in paragraph 4 that it is a serial filer and the other allegations in the first sentence. Debtor denies the allegations in paragraph 4 that it has no reasonable prospect of reorganization. Debtor denies the allegations in the remaining allegations in paragraph 4.

45.    Debtor denies the allegations in paragraph 5. A chapter 7 liquidation may benefit

NBK but in all likelihood will not benefit any other creditors.

46.     Debtor admits in paragraph 6 that the Debtor filed this case on December 5, 2023 after the dismissal of the case filed on July 5, 2023.  The Debtor admits the allegations in the last sentence of paragraph 6.

47.     Debtor admits in paragraph 7 that the membership interests of the Debtor are held by Galleria 2425 JV, LLC ("Galleria 2425 JV").  Debtor admits that Choudhri is the individual with the control of both the Debtor and Galleria 2425 JV.  Debtor admits that its primary asset is the real estate at 2425 West Loop South, Houston, Texas 77027 (the "Property").  Debtor admits that the Property is managed by Jetall but denies the allegation that Jetall does not pay rent.

48.     Debtor admits in paragraph 8 that NBK loaned the Debtor funds but denies the amount.  NBK was involved in the structure of the transaction and NBK suggested the structure. Counsel for NBK sent an email to Zaheer on or about January 26, 2021, instructing Debtor admits various loan documents were executed but does not admit that NBK has a first lien or that the loan documents are valid and enforceable.  Debtor denies the remaining allegations in paragraph 8.

49.     Debtor has insufficient information to admit or deny the allegations in paragraph 9 and therefore denies such allegations. The Loan Agreement may have had such terms but the Debtor has insufficient information to admit or deny if NBK complied with the Loan Agreement as to various terms, including, without limitation, funding of the Interest Reserve Account.

50.     Debtor generally admits in paragraph 10 the general statements.

51.     Debtor denies the first sentence of paragraph 11.  Debtor denies the second sentence of paragraph 11. Debtor has insufficient information to admit or deny the allegations in the third paragraph and therefore denies such allegations. Debtor admits the fourth sentence that NBK sent a letter to the Debtor but denies that the basis of the letter was accurate.  Debtor denies the allegations in the last sentence of paragraph 11.

52.     Debtor admits in paragraph 12 that in 2022 that the Debtor, Choudhri, Naissance Galleria, LLC and NBK entered into a confidential settlement agreement.  Since the terms of the settlement are confidential, Debtor is not responding to allegations on information in the confidential settlement agreement.  Debtor denies that it defaulted under the settlement agreement.  Debtor denies all remaining allegations in paragraph 12.

53.     Debtor admits in the first sentence of paragraph 13 that NBK noticed the Property for foreclosure and also filed a petition in state court on or around March 28, 2023.  Debtor admits that it filed a request for a temporary restraining order in the state court to prevent wrongful actions by NBK.  Debtor can neither admit or deny the allegations after the sentence starting "On April 12, 2023 . . ." due to the confidential nature of the actions in the court.  Debtor has insufficient information to admit or deny the remaining allegations in paragraph 13 and therefore denies such allegations.

54.     Debtor admits in paragraph 14 that it requested TROs from the state court in July of 2023 and the requests were denied.  Debtor admits that a chapter 11 bankruptcy was filed on July 5, 2023, to prevent a wrongful foreclosure by NBK.

55.     Debtor admits in paragraph 15 that NBK filed a motion to dismiss the bankruptcy case and such motion was denied by Judge Lopez in the prior bankruptcy case. Debtor admits that it filed a plan and disclosure statement prior to the hearing on the motion to dismiss.  Debtor denies all remaining allegations in paragraph 15.

56.     Debtor admits in paragraph 16 that the summary of the plan is generally correct.  The plan sets forth in detail the plan provisions and the Debtor would refer to the plan for the specific details.  Debtor denies all remaining allegations in paragraph 16.

57.     Debtor admits in paragraph 17 the general statements of the prior plan but directs the court to the actual terms of the filed plan but Debtor denies the valuation allegation.  Debtor

contests the right of NBK to retain the tax liens due to the breach of the settlement by NBK. Debtor generally admits the first part of the statements in the last sentence of paragraph 17 (until the comma) but directs the court to the specific terms of the plan. Debtor denies all remaining allegations in paragraph 17.

58.     Debtor admits the allegations in the first sentence of paragraph 18. Debtor has insufficient information to admit or deny the remaining allegations in paragraph 18 and denies such allegations.

59.     Debtor admits in paragraph 19 that parts of the September 22, 2023 hearing are quoted, but alleges that the quoted parts must be taken in context with the entire hearing. Judge Lopez stated he did not want to be quoted from the hearing.

60.     Debtor admits in paragraph 20 that on November 1, 2023, Judge Lopez dismissed the prior case *sua sponte*. Debtor admits that parts of the November 1, 2023 hearing are quoted in paragraph 20, but alleges that the quoted parts must be taken in context with the entire hearing. Judge Lopez stated he did not want to be quoted from the hearing.

61.     Debtor admits in the first sentence of paragraph 21 that NBK posted the Property for foreclosure on December 5, 2023. Debtor admits the allegations in second, third and fourth sentences of paragraph 21. Debtor denies the allegations in the last sentence of paragraph 21 as to amounts owed by the Debtor to NBK and denies such allegations in the last sentence of paragraph 21.

62.     Debtor admits the allegations in paragraph 22 but denies that such allegations are applicable to this case and to the Debtor. Debtor denies that this case should be converted to a chapter 7 case.

63.      Debtor admits the allegations in paragraph 23 but denies that such allegations are applicable to this case and to the Debtor. Debtor denies that this case should be converted to a

chapter 7 case.

64.     Debtor admits the allegations in paragraph 24 but denies that such allegations are applicable to this case and to the Debtor. Debtor denies that this case should be converted to a chapter 7 case.

65.     Debtor admits the allegations in paragraph 25 on good faith can be applicable to certain cases but denies that such allegations are applicable to this case. The Debtor denies any bad faith allegations in paragraph 25, asserts that the Debtor has operated at all times in good faith and denies in general the allegations as may be related to the Debtor in this case.

66.     Debtor denies the allegations in the first sentence of paragraph 26. This case is dramatically different from *Little Creek*. Debtor admits in the second sentence of paragraph 26 that the cases were filed shortly before foreclosures but denies the remaining allegations. Debtor admits in the third sentence of paragraph 26 that the Debtor could have appealed the dismissal of the case and that it filed further TROs in state court. Debtor denies the remaining allegations in such sentence. Debtor admits that the applications for TROs were denied in the fourth sentence of paragraph 26.

67.     Debtor admits in paragraph 27 that Judge Lopez made statements in the November 1, 2023 hearing but denies that such statements are applicable at this time and that such statements are taken out of context. Judge Lopez stated that he did not want to be quoted. Debtor denies the remaining allegations in paragraph 27.

68.     Debtor denies the allegations in paragraph 28 that unforeseen changes in circumstances must be present to justify the refiling. To the extent that unforeseen circumstances are needed, the actions involving Naissance Galleria, LLC, Zaheer and the attorneys for both Naissance Galleria and Zaheer in the prior bankruptcy case of the Debtor were a very significant unforeseen circumstance.

69.     Debtor denies the allegations in paragraph 29.  The "tests" are not limited.  Debtor denies that it does not have the ability to effectuate a reorganization plan.  The dismissal of the prior case involved the allegations of Naissance and Zaheer, which after the fact were improper and incorrect and wrongful allegations.

70.     Debtor denies the allegations in paragraph 30.  Debtor agrees that management has not changed, Choudhri still owns and controls the Debtor but the issues involving the funding of the plan and Naissance and Zaheer are different. Debtor denies the remaining allegations in paragraph 30.

71.     Debtor denies the allegations in paragraph 31.

72.     Debtor denies the allegations in paragraph 32.

73.     Debtor denies the allegations in paragraph 33.

74.     Debtor denies the allegations in paragraph 34.  Taxes as of the filing date are prepetition taxes that can be paid through the plan. Debtor believes that the increase in tenant rentals will more than offset the ad valorem taxes for 2023.

75.     Debtor acknowledges in paragraph 35 the statements on property taxes.  The ad valorem taxes for 2023 are pre-petition taxes.  Debtor acknowledges the remaining statements in paragraph 35 apply to ad valorem taxes on the Property.

76.     In paragraph 36, the Debtor has protested the property taxes.  The estimate of property taxes in paragraph 36 is approximately correct without the protest of the taxes.  The plan to be submitted by the Debtor for this case will adequately address the tax issues. Debtor denies the remaining allegations in paragraph 36.

77.     Debtor denies the allegations in paragraph 37 with regard to the property taxes and erosion of the property value.  Debtor denies that the estate is administratively insolvent due to the investment of funds into the equity of the Debtor post filing.   Debtor denies the remaining

allegations in paragraph 37.

78. Debtor admits in paragraph 38 that quotes from cases may be correct but denies that such quotes are applicable to this case. Debtor has funds to address such issues and therefore does not lack income, operating funds or other means to reorganize.

79. Debtor denies the allegations in paragraph 39. Debtor has a significant likelihood of reorganizing in the near future.

80. Debtor denies the allegations in paragraph 40.

81. The statements in paragraph 41 are from statutes and cases. Debtor denies that such allegations are applicable to the Debtor.

82. Debtor admits in paragraph 42 that it filed the motion to use cash collateral and then withdrew the motion. Debtor denies the remaining allegations in paragraph 42.

83. Debtor denies the allegations in paragraph 43. Debtor denies all allegations of any type of lying or scapegoating and other allegations in paragraph 43. Judge Lopez stated he was not to be quoted.

84. Debtor denies the allegations in paragraph 46.

85. Debtor admits in paragraph 47 that NBK has quoted cases on conversion but denies that any of the allegations (to the extent any are in paragraph 47) are denied. Debtor denies that the quoted or cited cases are applicable. Debtor believes it can confirm and effectuate a plan.

86. Debtor denies the allegations in paragraph 48. The case is not pointless. Debtor has and will continue to have sufficient funds to confirm and effectuate a plan.

87. Debtor in paragraph 49 has insufficient information to admit or deny the allegations and therefore denies the allegations in paragraph 49. The allegations in paragraph 49 relate to the prior bankruptcy case. The allegations at this time are speculation and opinion only. Debtor denies the allegations in the last sentence of paragraph 49.

88.     Debtor denies the allegations in paragraph 50.  Debtor has or will have both the funds to reorganize and the structure of a plan for reorganization.

89.     Debtor denies the allegations in paragraph 51.

90.     The statements in paragraph 52 are from case law and are speculative and opinions. Debtor denies such allegations in paragraph 52.

91.     Debtor denies in paragraph 53 that conversion is in the best interests of creditors. Other than NBK, no other creditors would probably get any funds from chapter 7 case.  Debtor denies that Mr. Darjean lacks information about the Debtor's finances and reorganization.  To the extent that Mr. Darjean does not have sufficient information, Chouldhri has sufficient information to address the issues of reorganization.

92.     Debtor denies the allegations in paragraph 54.  Debtor acknowledges that certain property taxes have not been paid but the plan will address property taxes.  Debtor denies that the Debtor does not intend on reorganizing.  Debtor denies in paragraph 54 that conversion is in the best interests of any creditors except for NBK.

93.     Debtor denies the allegations in paragraph 55.  Conversion and a chapter 7 trustee will only help NBK, not other creditors.

94.     Debtor denies the allegations in paragraph 56.

95.     Paragraph 57 does not require a response.  Debtor has insufficient information to respond to the allegations in paragraph 57 and therefore denies such allegations.

96.     Debtor denies the allegations in the last paragraph.

97.     Debtor requests a hearing.

## CONCLUSION

WHEREFORE, the Debtor respectfully requests this Court deny the motion of the National Bank of Kuwait, S.A.K.P., New York Branch to convert this case to a case under chapter 7 and for

such other and further relief as to which the Debtor may be entitled and which may be just and proper.

Dated: January 22, 2024

Respectfully submitted,

*/s/Reese W. Baker*
Reese W. Baker
Texas Bar No. 01587700
Sonya Kapp
TX Bar No. 11095395
Nikie Marie Lopez-Pagan
TX Bar No. 24090233
Baker & Associates
950 Echo Lane, Suite 300
Houston, Texas 77024
713-869-9200
713-869-9100 (fax)
**COUNSEL FOR THE DEBTOR**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on January 22, 2024, a true and correct copy of the foregoing document was delivered to the Electronic Filing Service for the United States Bankruptcy Court for the Southern District of Texas.

*/s/  Reese W. Baker*
Reese W. Baker

# AMENDMENT NO. 1
## TO AMENDED AND RESTATED
## LIMITED LIABILITY COMPANY AGREEMENT OF
## GALLERIA 2425 JV, LLC

This Amendment No. 1 to the Amended and Restated Limited Liability Company Agreement (this "**Amendment**") of Galleria 2425 JV, LLC, a Delaware limited liability company (the "**Company**"), is dated effective as of May **24**, 2018 (the "**Effective Date**"), and executed by Naissance Capital Real Estate, LLC, a Delaware limited liability company, Galleria West Loop Investments II LLC, a Texas limited liability company, and Ali Choudhri, an individual residing in Texas.

## RECITALS:

**A.**     Reference is herein made to that certain Amended and Restated Limited Liability Company Agreement of the Company dated effective as of May 23, 2018 (the "**LLC Agreement**"). Terms used but not defined herein shall have the meanings set forth in the LLC Agreement.

**B.**     The Members desire to modify certain provisions of the LLC Agreement concerning management of the Company.

**C.**     Pursuant to Section 14.10 of the LLC Agreement, the LLC Agreement may be amended by the both of the Members.

## AGREEMENT:

The Members hereby agree as follows:

**Section 1.     Acknowledgment of Beneficial Owner.** The Members acknowledge that (i) the GWLI II Member, which holds 98.77% of the Membership Interest of the Company (the "**GWLI II Interests**"), is holding the GWLI II Interests solely as the trustee for, or as the nominee of, Ali Choudhri, an individual residing in Texas (the "**Beneficial Owner**"), who is, and has been since the Company's formation, the beneficial owner of 100% of the GWLI II Interests and (ii) whatever rights, privileges and benefits held, or duties, detriments and obligations owed by the GWLI II Member, belong to, and since the formation of the Company, have belonged to, the Beneficial Owner.

**Section 2.     Amendment to Section 8.1.** Section 8.1 of the LLC Agreement is hereby amended and restated to read as follows:

"**Section 8.1     Management of the Company**.

(a)     The business and affairs of the Company will be managed by the Managing Member. Subject to the provisions of <u>Section 8.2</u>, the Managing Member will have full and complete discretion to manage and control the business and affairs of the Company, to make all decisions affecting the business and affairs of the Company, and to take all such actions as it deems necessary or appropriate to accomplish the purpose of the Company

001658

set forth in <u>Section 2.5</u>; provided that, the Managing Member will manage the Company in accordance with the Budget. The actions of the Managing Member taken in accordance with the provisions of this Agreement will bind the Company. No other Member will have any authority or right to act on behalf of or bind the Company, unless otherwise provided herein or unless specifically authorized by the Managing Member pursuant to a resolution expressly authorizing such action which resolution is duly adopted by the Managing Member.

(b)    Notwithstanding anything herein to the contrary, for so long as the GWLI II Member shall remain a Member of the Company, then either (i) the GWLI II Member or (ii) the Beneficial Owner, acting as agent for the GWLI II Member, shall have the right, upon written notice to the other Members, to appoint the GWLI II Member as the Managing Member and thenceforth the GWLI II Member shall be permitted to take all actions provided under <u>Section 8.2</u> of the Agreement without the consent or approval of any other Member."

**Section 3.**    <u>**Miscellaneous.**</u>  The provisions of the LLC Agreement shall remain in full force and effect except as expressly amended and modified as set forth in this Amendment. This Amendment and the rights and obligations of the parties hereunder shall be governed by and interpreted, construed and enforced in accordance with the laws of the State of Delaware without regard to any choice of law principles. This Amendment may be executed in one or more counterparts, each of which shall be an original and all of which shall constitute but one and the same document. In connection with this Amendment, the Company and each Member hereby agrees, at the request of the Company or any other Member, to execute and deliver such additional documents, instruments, conveyances another assurances and to take such further actions as may be required to carry out the provisions hereof and give effect to the transactions contemplated hereby.

*[Signature Page Follows.]*

001659

Executed effective as of the Effective Date:

**MEMBERS:**

NAISSANCE CAPITAL REAL ESTATE, LLC, a
Delaware limited liability company

By: _____
Name: _Azecinch Zaheer_____
Title: _Authorized Signature_____

GALLERIA WEST LOOP INVESTMENTS II LLC, a
Texas limited liability company

By:    Galleria West Loop Investments, LLC, a Texas
       limited liability company, its manager

By: _____
Name: _Bradley S. Parker_____
Title: _President_____

**BENEFICIAL OWNER:**

_____

ALI CHOUDHRI



**Ali @ Jetall <ali@jetallcompanies.com>**

---

## National Bank of Kuwait, S.A.K.P., New York Branch / Galleria 2425 Owner, LLC

---

**manny.gardberg@hklaw.com** <manny.gardberg@hklaw.com>          Mon, Aug 16, 2021 at 2:48 PM
To: mona.dajani@pillsburylaw.com
Cc: ali@jetallcompanies.com, Bruce.Merwin@hklaw.com, Charles.Jackson@hklaw.com

Mona, Please see attached. Best, Manny

**Manny Gardberg** | **Holland & Knight**
Associate
Holland & Knight LLP
811 Main Street, Suite 2500 | Houston, Texas 77002
Phone 713.653.8615 | Fax 713.654.1871
manny.gardberg@hklaw.com | www.hklaw.com

---

Add to address book | View professional biography

---

NOTE: This e-mail is from a law firm, Holland & Knight LLP ("H&K"), and is intended solely for the use of the individual(s) to whom it is addressed. If you believe you received this e-mail in error, please notify the sender immediately, delete the e-mail from your computer and do not copy or disclose it to anyone else. If you are not an existing client of H&K, do not construe anything in this e-mail to make you a client unless it contains a specific statement to that effect and do not disclose anything to H&K in reply that you expect it to hold in confidence. If you properly received this e-mail as a client, co-counsel or retained expert of H&K, you should maintain its contents in confidence in order to preserve the attorney-client or work product privilege that may be available to protect confidentiality.

---

**7 attachments**

 **_HK Letter re Notice - 8 13 2021.pdf**
52K

 **_Unanimous Consent - January 2021.pdf**
854K

 **2425 Galleria Owner - Operating Budget 2021 (July).pdf**
232K

001661

📄 **NBK - 2425WLS Leasing Prospect List.pdf**
100K

📄 **NBK - Proposal 2021.08.13 final.pdf**
562K

📄 **PSA - 2425 West Loop South.pdf**
535K

📄 **Purchase - SIBS - 2425 West Loop South Offer letter Updated.pdf**
42K

001662

# Holland & Knight

Manny Gardberg
+1 713-653-8615
manny.gardberg@hklaw.com

August 13, 2021

*Via FedEx, Via First Class Mail*
*Federal Express 7744 9832 2287*

National Bank of Kuwait, S.A.K.P., New York
Branch
299 Park Avenue
New York, NY 10171
Attention: Corporate Finance

    Re:    Notice of Borrower's change of address under that certain Loan Agreement dated
May 23, 2018, entered into by and between Galleria 2425 Owner, LLC, as borrower,
and National Bank of Kuwait, S.A.K.P., New York Branch, as administrative agent
and lender

Ladies and Gentlemen:

First, Borrower reiterates its interest in resolving all outstanding issues with Lender
through an in-person meeting with the key principals. Borrower remains open to meeting at
Agent's convenience.

Second, as discussed between Azeemeh Zaheer and Lender's representatives in New
York this year, the Managing Member of the Borrower's sole member was replaced pursuant to
the enclosed Unanimous Consent. Notice of same was delivered to Lender. All notices to
Borrower should be sent per the below:

    To Borrower:    Galleria 2425 Owner, LLC
        1001 West Loop South, Suite 700
        Houston, TX 77027
        Attention: Ali Choudhri

    With copies to:    Holland & Knight LP
        811 Main Street, Suite 2500
        Houston, TX 77002
        Attention: Bruce Merwin

Atlanta | Austin | Boston | Charlotte | Chicago | Dallas | Denver | Fort Lauderdale | Fort Worth | Houston
Jacksonville | Los Angeles | Miami | New York | Orange County | Orlando | Philadelphia | Portland
San Francisco | Stamford | Tallahassee | Tampa | Tysons | Washington, D.C. | West Palm Beach
Algiers | Bogotá | London | Mexico City | Monterrey

001663

Sincerely yours,

HOLLAND & KNIGHT LLP


Manny Gardberg

MG:cj

Enclosures

cc:
Ali Choudhri (via email)
Bruce Merwin (of the firm)

Mona Dajani (via FedEx and email: mona.dajani@pillsburylaw.com)
*Federal Express 7744 9870 6215*
Pillsbury Winthrop Shaw Pittman LLP
31 West 52nd Street
New York, NY 10019-6131
Attention: Mona Dajani, Esq.

## GALLERIA 2425 JV, LLC

## UNANIMOUS WRITTEN CONSENT OF THE MEMBERS
## IN LIEU OF MEETING

Jun 18 , 20 21

THE UNDERSIGNED, being all of members (each, a "Member" and collectively, the **"Members"**) of Galleria 2425 JV, LLC, a Delaware limited liability company (**"Company"**), do hereby waive any and all requirements for calling, giving notice of and holding a meeting and, in lieu of such meeting, consents to the adoption of the following resolutions:

RESOLVED, that Galleria West Loop Investment II LLC, a Texas limited liability company is hereby appointed as the Managing Member the Company pursuant to the terms of that certain Amended and Restated Limited Liability Company Agreement of Galleria 2425 JV, LLC.

*[Signature page follows]*

001665

EXECUTED to be effective as of the date first written above.

**MEMBERS:**

NAISSANCE CAPITAL REAL ESTATE, LLC,
a Delaware limited liability company

By: _____
Name:     Azeemeh Zaheer
Title:    Managing Member


GALLERIA WEST LOOP INVESTMENTS II LLC,
a Delaware limited liability company

By:    Galleria West Loop Investments, LLC,
       a Texas limited liability company,
       its manager


By: _____
Name: _____
Title: _____

EXECUTED to be effective as of the date first written above.

**MEMBERS:**

NAISSANCE CAPITAL REAL ESTATE, LLC,
a Delaware limited liability company

By: _____
Name:    Azeemeh Zaheer
Title:    Managing Member


GALLERIA WEST LOOP INVESTMENTS II LLC,
a Delaware limited liability company

By:    Galleria West Loop Investments, LLC,
       a Texas limited liability company,
       its manager

By: _____
Name: _____
Title: _____





Bradley Parker <parker@

---

# Fwd: Galleria appraisal

1 message

**Brad Parker** <parker@jetallcompanies.com>             Thu, Jan 24, 2019 at 8:30 AM
To: azeemeh@naissancecapital.co.uk, Ali Choudhri <ali@jetallcompanies.com>

   FYI

   **Brad Parker**
   Jetall Companies
   2500 West Loop South, Suite 255
   Houston, Texas 77027
   713-789-7654 telephone
   713-789-3331 facsimile
   832-293-3893 mobile
   parker@jetallcompanies.com

   Neither Jetall nor any of its subsidiaries shall be bound by or to any lease, purchase and/or sale agreement, contract or
   any other instrument or modification thereof, nor to any oral statement made by any person, unless the same has been
   reduced to writing and signed by an officer of Jetall or of its appropriate subsidiary.

   Begin forwarded message:

       **From:** Jack Bass <jack@bassval.com>
       **Date:** January 24, 2019 at 7:41:46 AM CST
       **To:** Brad Parker <parker@jetallcompanies.com>
       **Subject: Fwd: Galleria appraisal**

       Brad,

       Can I get the current rent roll, 2018 and 2019 budget income and expense reports and information
       regarding floors 2 and 8. See below. Thanks.

       Jack W. Bass II, MAI
       713.502.5690

       Begin forwarded message:

             **From:** Michael Carter <Michael.Carter@nbkny.com>
             **Date:** January 24, 2019 at 7:27:13 AM CST
             **To:** "jack@bassval.com" <jack@bassval.com>
             **Subject: Galleria appraisal**

             Jack,

             Any feedback on the status of the Galleria appraisal?

             Have you made contact with the management? Did they tell you about their pending lease for
             floors 2 and 8 to be converted to apartment hotel? This should be included in the appraisal.

       **Michael C. Carter**

# GALLERIA 2425 OWNER, LLC
## V
# NATIONAL BANK OF KUWAIT

001669

# TIMELINE

- Leasing of 2425 West Loop decreased with the rise of COVID outbreaks and lockdown in March 2020

- Prior to COVID, 2425's occupancy levels made the building worth about $100MM.

- The largest tenant, Stage, filed for Bankruptcy resulting in the loss of over 8 leased floors.

- With occupancy dwindling because of the pandemic, Kuwait saw an opportunity to acquire a building worth double their investment.

- Galleria 2425, LLC, was working to refinance and acquire new tenants to bounce back from the loss sustained from a global pandemic.

- Kuwait failed to approve leases to repopulate the building in order to foreclose on the loan.

- Kuwait's actions have scared off potential tenants and refinancing partners.

001670

**INTERROGATORY NO. 6:**

What prospective or potential tenants have you approved for the subject property located at 2425 West Loop South, Houston, Texas 77027 since May 23, 2018?

**RESPONSE:**

NBK objects to this Interrogatory to the extent it contains legal conclusions, assumes facts not in evidence, and/or is vague and ambiguous.

Subject to and without waiving the foregoing objections, the Borrower offered Sonder USA Inc. ("Sonder") as a prospective tenant, which NBK approved. However, on information and belief, Sonder never moved into the property located at 2425 West Loop South, Houston, Texas 77027 (the "Property"), and Sonder ultimately sued Plaintiff. Other than Sonder, Borrower has not submitted any other prospective or potential tenants for NBK to approve for the Property since May 23, 2018.

# ANSWER TO ROG #6

- Kuwait states that it never received any leases for approval other than Sonder since the inception of the loan in 2018.

- Statements and emails by representatives of Kuwait prove otherwise.

- The lack of approval of the leases is an intentional interference on the performance of the borrower.

3

001671

## MICHAEL CARTER DEPO

- Michael Carter states that he has received ONLY two leases: Sonder and St. Christopher.

```
13    Q    And just to be clear, did you review any leases
14 other than the Sonder leases and the St. Christopher
15 leases to date?
16    A    Those are the only two I remember ever
17 receiving.
```

001672

# AUGUST 13ᵀᴴ LETTER

August 13, 2021

National Bank of Kuwait Lending Team,

Please see the accompanying PDF with our active tenant prospect list. We have taken the liberty to highlight key prospects below that are noteworthy for discussion in your follow up conversation with us:

**Lease-Up and Renewal Prospects for Discussion**

To accelerate lease-up, we are working with multiple brokers, including Colliers, Cushman & Wakefield, The Richland Companies, and NewQuest Properties. We are currently in discussions with:

- **Healthcare Service Organization**
  - •Size: 130,000+ RSF - large client requirement in their preliminary planning stages: •Industry: Healthcare Service Organization •Type of use: Administration Offices •Direct/ Sublease •Commencement date: Q3/2023 •Term: 5-10 yrs. They are specifically VERY interested in amenities available, for example: deli, gym, day care, conference center (# of seats), training center (# of seats).
- **Invesco:**
  - We met with the team twice and are actively pursuing them for 2425. They are interested in a 157-month lease term for 208,830 SF of Net Rental Area.
- **Financial Services Firm**
  - Office •AREA: West Houston (610 West, Hwy 290, Beltway 8) •SPACE: Open Concept •SIZE: Approximately 20,000 – 25,000 rsf • PARKING: 5/1000 ratio •OCCUPANCY: Late 2Q22/Early 3Q22 •TERM: 36-60 months with renewal options • This tenant is currently at 24 Greenway on their top floor and have been looking at other A buildings.
- **Beyond Finance:**
  - We are discussing a 68-month lease term for +/- 40,000 rentable SF.

- **Banco Afirme**
  - We submitted a 64-month lease term for 4,545 SF of Net Rental Area.
- **Wallis Bank (existing tenant):**
  - Renew 3,054 SF of rental space for 60-month term starting January 1, 2022.
- **Others (working directly with ownership):**
  - ResMed (https://www.resmed.com/en-us/), interested in the entire building, working directly with Dr. Peter Farrell, Founder and Chairman
  - Healthstore Holdings (https://www.healthstore.com/), interested in a 15-year term with 80,000 SF in phase 1 and 75,000 SF in 12 months as phase 2
  - Immunicom (https://immunicom.com/), interested in at least two full floors, moving HQ from San Diego, CA

**Sale Prospects**

- **SIBS International:**
  - CEO/ Founder: Insukba Lyons, SIBS International Inc, parent company to a portfolio of subsidiaries and partnerships.
- **DC Partners:**
  - CEO: Roberto Contreras, EB-5 deals, built Thompson Hotel on Riverwalk in San Antonio, sold out of 66 condos and still own the hotel, building high rises in Houston, e.g.: Arabella, The Allen, etc.
- **Timberline Real Estate Partners:**
  - CEO/ Founder: Stan Nix (formerly with Greenfield Partners), owns and operates in Austin, TX: Hotel San Jose, Austin Motel, Carpenter Hotel, and 100-acre BMM SF development site in Loudon/ Fairfax Counties, VA.
- **The Richland Companies:**
  - President & CEO: Edna Meyer-Nelson, portfolio consists of 37 commercially owned properties in the Southwest US.
- **And many others that are in active negotiations.**

Kuwait was re-sent a letter on August 13ᵗʰ with all the prospective tenants, renewals, and sale prospects for review.

001673

manny.gardberg@hklaw.com <manny.gardberg@hklaw.com>
To: mona.dajani@pillsburylaw.com
Cc: ali@jetallcompanies.com, Bruce.Merwin@hklaw.com, Charles.Jackson@hklaw.com

Mona, Please see attached. Best, Manny

**Manny Gardberg | Holland & Knight**
Associate
Holland & Knight LLP
811 Main Street, Suite 2500 | Houston, Texas 77002
Phone 713.653.8615 | Fax 713.654.1871
manny.gardberg@hklaw.com | www.hklaw.com

Add to address book | View professional biography

7 attachments
_HK Letter re Notice - 8 13 2021.pdf
52K
_Unanimous Consent - January 2021.pdf
854K
2425 Galleria Owner - Operating Budget 2021 (July).pdf
232K

ttps://mail.google.com/mail/u/0/?ik=3785613f6&view=pt&search=all&permmsgid=msg-f%3A1708280571

'15/22, 8:10 PM                                    Jetall Companies Mail - National Bank of

NBK - 2425WLS Leasing Prospect List.pdf
100K
NBK - Proposal 2021.08.13 final.pdf
562K
PSA - 2425 West Loop South.pdf
535K
Purchase - SIBS - 2425 West Loop South Offer letter Updated.pdf
42K

# AUGUST 16, 2021, EMAIL

- Multiple leases were sent to Kuwait for approval that Kuwait failed to approve or respond to.

- Eventually, Plaintiff retained attorneys to reiterate the need for approval because of the lack of response on the bank's behalf.

6

**RELATED GROUP PROPOSAL**

**From:** Michael Carter <Michael.Carter@nbkny.com>
**Date:** Monday, 23 September 2019 at 13:22
**To:** Azeemeh Zaheer <azeemeh@naissancecapital.co.uk>, Lisa Walker <Lisa.Walker@nbkny.com>
**Subject:** RE: LOI

My primary concern is that the tenant determines when the commencement date is, presumably because they have zoning and building department approvals to complete as well as financing to arrange, which is understandable, however there does not appear to be an outside expiration date for the Commencement date. It appears they could tie up these space permanently without having to pay rent. I think you should have an outside date for Commencement.

- Related Group reached out to lease the parking garage located at 2425.
- The garage was to be used for overflow parking of up to 110 spaces.
- This proposal contradicts Michael Carter's statements about receiving only two leases in his deposition.

7

**From:** Ali @ Jetall <ali@jetallcompanies.com>
**Sent:** Saturday, July 2, 2022 5:53 PM
**To:** Michael Carter <Michael.Carter@nbkny.com>
**Subject:** Fwd: Leases for Approval - 2425 West Loop South

Michael,

Please see the attached.

Please review and let me know what you think and if you are available to discuss ASAP.  I am available tomorrow, Monday, Tuesday.  Is there a time that works best for you?



# LEASE APPROVAL EMAIL 07/02

- Five lease proposals were sent via email to Michael Carter for review.

- This is in direct contrast from what was stated in Michael Carter's deposition and ROG #6.

- Not only were more leases sent, but failure to approve the leases has created an impossibility of performance for the borrower.

8

**From:** Patrick Hayes <PHayes@andrewsmyers.com>
**Sent:** Thursday, June 9, 2022 3:46 PM
**To:** Conrad, Charles C. <charles.conrad@pillsburylaw.com>
**Subject:** 2425 West Loop South--Ali Choudry

Charles,

As we discussed earlier this week, attached is the proposed lease for the 7th floor of 2425 W. Loop South.

Regards,

Patrick

## EMAILS WITH PROSPECTIVE TENANTS

- The interference continues through today.

- Counsel for Kuwait had discussions with prospective tenants directly, without involvement of Plaintiff.

9

001677

# SONDER TIMELINE

- Sonder is an investment grade tenant sought after by many firms in the Houston area.

- Sonder arranged to lease 3 floors of 2425 in early 2019.

- After the leases were verbally approved and representations were made by the bank that they would fund the improvements, landlord proceeded to prepare the space for the tenant

- The floors of the building had been gutted for improvements causing significant financial damage to the borrower.

- March 22, 2019, Kuwait sent a letter to the borrower stating that the Sonder leases were "null and void."

- March 7, 2022, Kuwait responded to ROG #6 stating that Sonder was approved.

- However, during Michael Carter's deposition on July 8, 2022, Kuwait contends they never approved or denied the Sonder lease.

001678

```
13      Q      Did you ever make a writing that was approving
14  or declining the Sonder lease?
15      A      No.
16      Q      So you neither made a decision, nor -- you
17  neither made a decision approving, nor made a decision
18  declining, correct?
19      A      That's correct.
20      Q      Ever.
21      A      That's correct.
```

## MICHAEL CARTER DEPO

- Michael Carter states in his deposition that the Sonder lease was never formally approved or declined.

- He states there was not a written agreement for Sonder.

- His statement contradicts what was written in ROG #6.

11

<u>INTERROGATORY NO. 6:</u>

What prospective or potential tenants have you approved for the subject property located at 2425 West Loop South, Houston, Texas 77027 since May 23, 2018?

<u>RESPONSE:</u>

NBK objects to this Interrogatory to the extent it contains legal conclusions, assumes facts not in evidence, and/or is vague and ambiguous.

Subject to and without waiving the foregoing objections, the Borrower offered Sonder USA Inc. ("Sonder") as a prospective tenant, which NBK approved. However, on information and belief, Sonder never moved into the property located at 2425 West Loop South, Houston, Texas 77027 (the "Property"), and Sonder ultimately sued Plaintiff. Other than Sonder, Borrower has not submitted any other prospective or potential tenants for NBK to approve for the Property since May 23, 2018.

ANSWER TO ROG #6

- But as of March 7, 2022, in their response to ROG #6, Kuwait states that Sonder WAS approved.

| 2

**From:** Michael Carter <Michael.Carter@nbkny.com>
**Date:** January 24, 2019 at 7:27:13 AM CST
**To:** "jack@bassval.com" <jack@bassval.com>
**Subject: Galleria appraisal**

Jack,

Any feedback on the status of the Galleria appraisal?

Have you made contact with the management? Did they tell you about their pending lease for floors 2 and 8 to be converted to apartment hotel? This should be included in the appraisal.


**Michael C. Carter**

# JANUARY 24, 2019, EMAIL

- Despite allegedly "never approving" the Sonder lease, Michael Carter instructed Jack Bass to include the Sonder leases in the appraisal of 2425.

- By adding the Sonder lease to the appraisal, the value of the property significantly increased.

- Michael Carter directly communicated with the appraiser despite his testimony to the contrary.

13

001681

March 22, 2019

*Via FedEx & Email*
Galleria 2425 Owner, LLC
3139 W Holcombe Blvd #845
Houston, Texas 77025
Attention: Ms. Azeemeh Zaheer

Re:     Defaults.

Dear Ms. Zaheer:

Section 5.27 – Restrictions on Leasing and Material Misstatements
The Borrower is not permitted to execute a Material Lease (except any Telecom Lease) that has not been submitted to, and approved in writing by, the Administrative Agent prior to the execution of such Material Lease.  Section 5.27 further provides that any Material Lease executed without the prior written consent of the Administrative Agent is ***null and void.*** The Borrower entered into ***not one but*** two leases with Sonder USA Inc. as a tenant without having obtained the prior written consent of the Administrative Agent, in violation of Section 5.2. In fact, NBK stated to you on January 11, January 22 and February 4 that the first Sonder lease you were working on needed to be approved. Instead, we discovered that you misstated the facts to NBK concerning the leases on several occasions and had it signed. Regardless, NBK will not tolerate any material misstatements in the future and any Material Lease and any amendments without our prior written approval. The Borrower's breach of Section 5.27 would constitute an automatic Event of Default without a cure period.  Be notified that the leases you entered into are currently null and void unless and until NBK approves them in writing. Any lease approvals will be contingent upon execution by tenant of a Subordination Non-Disturbance and Attornment Agreement acceptable to NBK.

# DEFAULT LETTER MARCH 22, 2019

- Despite asking the appraiser to include the Sonder lease in the valuation of the building, the default letter shows that the bank again changes its position about its approval on the Sonder leases.

- Kuwait sent a default letter claiming the Sonder leases to be "null and void."

| 4

001682

## MICHAEL CARTER DEPO

- Despite Michael Carter's testimony to the contrary, he did in fact directly communicate with appraisers for the property.

```
1    Q    Would you have ever communicated with Jack Bass
2  to include the Sonder leases in the appraisal of the
3  building?
4    A    The borrower would have done that.
5    Q    Okay.  And so your testimony is that you would
6  not have communicated with the appraisers or initiated
7  the appraisals until after the default, correct?
8    A    Correct.
```


DEPOSITION
EXHIBIT
2

| From: | Michael Carter </o=EXCHNY01/ou=Exchange Administrative Group (FYDIBOHF23SPDLT)/cn=Recipients/cn=Michael Carter0b8> |
|---|---|
| Sent: | Wednesday, August 5, 2020 3:24 PM |
| To: | Bassem Boustany <BassemB@nbk.com> |
| Cc: | Marwan Isbaih <Marwan.Isbaih@nbkny.com>; Lisa Walker <Lisa.Walker@nbkny.com> |
| Subject: | Galleria |

Bassem,

FYI

This is confidential but Azeemeh of Naissance Capital, that manages the Galleria Borrower, called me today to say that she and Ali Choudry (the effective equity owner) have put in an offer to buy Stage stores out of Bankruptcy.

The rationale is that they can then start paying rent on the lease again and have control over reducing the size to make way for other tenants.

Ali has a friend in the retail business that could manage the repositioning of the stores and Stage has several distribution centers that it owns that could be sold as well.

The Board of Stage will have to decide whether to accept the offer or not, It would then need to be approved by the Bankruptcy judge. Azeemeh told me the judge was very positive about the offer because it would retain jobs at most of the store locations.

**Michael C. Carter**
Vice President
National Bank of Kuwait
299 Park Avenue
New York, N.Y. 10171
D: (212) 303-9897
M: (917) 750-0156
Fax: (212) 371-2561
Email: michael.carter@nbkny.com



CONFIDENTIAL

| | |
|---|---|
| **From:** | Michael Carter <Michael.Carter@nbkny.com> |
| **Sent:** | Friday, April 16, 2021 9:04 AM |
| **To:** | Sheriff Ezz (s.ezz@dukhanbank.com); Husam Al-Raimi (h.alraimi@bin-shihon.com) |
| **Cc:** | Marwan Isbaih <Marwan.Isbaih@nbkny.com>; Mona Dajani (mona.dajani@pillsburylaw.com); Adrienne Bond <abond@craincaton.com>; Lisa Walker <Lisa.Walker@nbkny.com> |
| **Subject:** | General approved Galleria Standstill Terms |

Sheriff, Hussam,

Below are the general approved terms for the Standstill.

<u>General Terms of Standstill</u>

1. NBK will standstill for three months from taking any action to remedy the existing Events of Default. If the below interim timetables are not met the Standstill will terminate earlier.
2. NBK will defer interest payments going forward during the term of the Standstill. However Interest will continue to accrue.
3. Mezz Investors will proceed to gain control of the managing member of the Mezz Borrower which owns the property by filing a UCC foreclosure on the pledge of shares of the Mezz Borrower and removing the equity owner, Ali Chowdhri.
4. Within 30 days Mezz Investors will appoint an asset and property manager and provide financial statements for the Borrower.
5. The earlier of 60 days or when the Mezz Investors gain control of the Mezz Borrower, the Mezz Investors will contribute up to $3.5MM to pay off the real estate tax liens for 2019 and the 2020 taxes as well as repay $500,000 of outstanding legal bills accrued under the defaults and pay the ~$350,000 breakage fee on the interest rate swap.
6. The Mezz Investors will continue to pay property operating expenses during the standstill, failure to do so will terminate the Standstill.
7. Within 90 days the Mezz lenders will have provided an operating and lease-up budget for NBK review and approval.

**Michael C. Carter**
Vice President
National Bank of Kuwait
299 Park Avenue
New York, N.Y. 10171
D: (212) 303-9897
M: (917) 750-0156
Fax: (212) 371-2561
Email: michael.carter@nbkny.com



**CONFIDENTIAL**