## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

In Re:                                          §
Galleria 2425 Owner, LLC                        §
     Debtor                         §
_____§_____
2425 WL, LLC                                    §
     Appellant                      §
                                                §
v.                                              §    CASE NO. 4:24-cv-01746
                                                §
Charles Murray, Chapter 11 Trustee              §
And National Bank of Kuwait                     §
     Appellees                      §

## <u>APPELLANT'S BRIEF</u>

**Stephen W. Sather**
**Barron & Newburger, P.C.**
**7320 N. MoPac Expwy., Suite 400**
**Austin, TX  78731**
**(512) 649-3243**
**Fax:  (512) 476-9253**

**Attorneys for Appellant**

## Table of Contents

**Statement of Appellate Jurisdiction** ...........................................................1

**Statement of the Issues and Standard of Review** ...............................2

**Statement of the Case** .....................................................................2

**Factual Background** ........................................................................3

**Summary of the Argument** ...............................................................5

**Argument** .....................................................................................6
    A.   Introduction................................................................6
    B.   The Final Cash Collateral Order Released Third Party
        Rights...........................................................................6
    D.   The Final Cash Collateral Order Did Not Provide for a
        Challenge Period............................................................8
    E.   The Final Cash Collateral Order Violates Purdue Pharma ........9

**Conclusion** ..................................................................................10

**Apppendix**

**LIST OF AUTHORITIES**

Cases

*Friends of the Earth, Inc. v. Laidlaw Environmental Services, Inc.,* 528 U.S. 167 (2000) ................................................................................... 8

*Harrington v. Purdue Pharma, LP*, 219 L.Ed. 2d 721, 2024 U.S. LEXIS 2848 (6/27/24) ........................................................................... 6,9,10

*Kipp Flores Architects, LLC v. Mid-Continent Cas. Co.*, 852 F.3d 405 (5th Cir. 2017)................................................................................ 7

*National Gypsum*, 208 F.3d 498 (5th Cir. 2000) ............................................... 2

*Sanchez Energy Corp.*, 2023 Bankr. LEXIS 73 (Bankr. S.D. Tex. 2023) ........ 9

Statutes

11 U.S.C. §361 .................................................................................... 9

11 U.S.C. §363 .................................................................................... 8

11 U.S.C. §502 .................................................................................... 7

11 U.S.C. §1123.................................................................................10

28 U.S.C. §157 .................................................................................... 8

28 U.S.C. §158 .................................................................................... 1

Rules

Fed.R.Bankr.P. 8002.................................................................................. 2

Fed.R.Bankr.P. 8013.................................................................................. 3

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

In Re:                                     §
Galleria 2425 Owner, LLC                   §
     Debtor                          §
_____
2425 WL, LLC                               §
     Appellant                       §
                                           §
v.                                         §      CASE NO. 4:24-cv-01746
                                           §
Charles Murray, Chapter 11 Trustee         §
And National Bank of Kuwait                §
     Appellees                       §

## <u>APPELLANT'S BRIEF</u>

TO THE HONORABLE U.S. DISTRICT JUDGE:

     COMES NOW 2425 WL, LLC, and submits this Appellant's Brief showing the Court as follows:

### <u>Statement of Appellate Jurisdiction</u>

     The Court has jurisdiction under 28 U.S.C. §158(a) (1) for the reason that this is an appeal from a final order of the United States Bankruptcy Court. The appeal was timely filed. The Bankruptcy Court entered its Final Order Authorizing the Trustee to Use Cash Collateral on April 5, 2024. Record 00021. Appellant filed a Motion for Reconsideration on April 19, 2024. Record 00023. The Motion for Reconsideration was denied on April 22, 2024.

Record 00024.  The Notice of Appeal was filed on May 6, 2024.  Record

00030.  The Amended Notice of Appeal was filed on May 8, 2024.  Under

Fed.R.Bankr.P. 8002(a), a notice of appeal is timely if filed within fourteen

(14) days after entry of the order being appealed. In this case, the Notice of

Appeal was filed fourteen days after entry of the order denying motion for

reconsideration.

## Statement of the Issues and Standard of Review

The issues designated in this case are:

a.    Did the Final Cash Collateral Order impermissibly restrict the

right of parties other than the Chapter 11 Trustee to object to the claim

of the National Bank of Kuwait?

b.    Did the Final Cash Collateral Order impermissibly eliminate

the right of any party to challenge the lien of National Bank of Kuwait

without due process?

The Court reviews the Bankruptcy Court's legal conclusions on a *de novo* basis.  *In re National Gypsum*, 208 F.3d 498 (5th Cir. 2000).  Factual findings "shall not be set aside unless clearly erroneous."  Fed.R.Bankr.P. 8013.

## Statement of the Case

The Court entered an order approving the appointment of Charles R.

Murray as Chapter 11 Trustee on February 9, 2024.  Docket entry 114, Record 00014.  The Trustee filed a Motion for Interim and Final Order Authorizing the use of Cash Collateral on March 20, 2024 ("Cash Collateral Motion").  Docket Entry 133, Record 00015.  Appellant and the Debtor objected to the Cash Collateral Motion. Docket Entries 147 and 149, Record 00016-17.  The Court entered an interim order on March 22, 2024.  Docket Entry 154, Record 00017.  Appellant and the Debtor then objected to the final order.  Docket Entries 167 and 168, Record 00018-19.  The Court overruled the objections and entered a final order on April 5, 2024 ("Cash Collateral Order").  Docket Entry 187, Record 00021.  Appellant filed a Motion for Reconsideration on April 19, 2024, which was denied on April 22, 2024. Docket entries 216 and 223, Record 00023-24.  Appellant filed a timely Notice of Appeal on May 6,2024 and an Amended Notice of Appeal on May 8, 2024.  Docket entries 287 and 296, Record 00030-31.

## Factual Background

The Debtor owns real estate located at 2425 West Loop in Houston, Texas. Record 002219.  The property was subject to several liens, including those of National Bank of Kuwait, New York Branch, and 2425 WL, LLC.  Record 002219.  The Trustee stipulated that "subject to any affirmative defenses, the amount due under note the Debtor issued to NBK (the "NBK

Note") was $63,552,988.00 on the Petition Date."  Record 002221.  The Trustee also stipulated that the lien of National Bank of Kuwait was "secured by valid, enforceable and properly perfected security interests in the Premises and lease thereof."  Id.  The Trustee also agreed that "the acknowledgements and stipulations in the Final Proposed Order shall be binding on the Trustee, the Estate, other parties in interest, and their respective representatives, successors, and assigns in all circumstances" subject to the Trustee's sole right "to challenge the amount or allowance of the NBK claim up to ten (10) days before a hearing on any plan of reorganization."  Record 002221-22.

Appellant properly objected to the language restricting its right to object to the claim of National Bank of Kuwait and to object to the validity and priority of its liens.  Docket entry 167, Record 00018.  The Court overruled the objections and entered the Trustee's proposed Final Order.  Record 003261-003270.  The Cash Collateral Order included the following language:

> 3. Stipulations and Agreements. In consideration for the relief granted in this Order, the Trustee, on behalf of the Estate, and NBK stipulate and agree to the following:
>
> a. NBK Claim. On May 23, 2018, the Debtor issued a note to NBK in the amount of $51,675,000.00 (the "NBK Note"). Subject to any claims, offsets, or affirmative defenses to the NBK Note or the Debtor's obligations thereunder, NBK was entitled to $63,552,988.00 under the NBK Note on the Petition Date (the "NBK Claim").  The Trustee, on behalf of the estate, reserves all rights to challenge the amount or allowance of the NBK Claim, or seek to equitably subordinate that claim, up to ten (10) days

before a hearing on any plan of reorganization for the Debtor is first scheduled for hearing with any such challenge to be heard and determined in connection with that hearing.

b. NBK Liens and Security Interests. The Debtor's obligations to NBK are secured pursuant to the Deed of Trust, Assignment of Leases and Rents and Profits, Security Agreement and Fixture filing (the "NBK Deed of Trust") and Absolute Assignment of Leases and Rents (the "NBK Assignment of Rents"), both of which were filed in the real property records of Harris County, Texas, prior to the Petition Date. NBK has a valid, enforceable, and properly perfected security interest in the Premises pursuant to the NBK Deed of Trust that has priority over any other lien or security interest, except any lien pursuant to Chapter 32 of the Texas Tax Code. NBK also has a valid, enforceable, and properly perfected security in the rents from leases of the Premises pursuant to the Deed of Trustee and the NBK Assignment of Rents. The value of NBK's collateral does not exceed the amount it is owed.

4. Effect of Stipulations and Agreements. The Trustee's acknowledgments and stipulations in this order shall be binding on the Trustee, the Estate, and their respective representatives, successors, and assigns in all circumstances. The stipulations contained in this Order shall be binding upon all other parties in interest and all of their respective successors and assigns.

Record 003264-65 and 003267.

## Summary of the Argument

The Final Cash Collateral Order released the right of Appellant to challenge either the claim or the lien of National Bank of Kuwait. Nothing in the Bankruptcy Code allows a Trustee to waive rights belonging to third parties to litigate the allowance of claims and liens.

As with the recent *Purdue Pharma* case, the relief granted by the Bankruptcy Court is illegal and unauthorized.

## <u>Argument</u>

A.    Introduction

The Supreme Court has recently stated that "(t)he bankruptcy code contains hundreds of interlocking rules about "'the relations between'" a "'debtor and [its] creditors.'" *Harrington v. Purdue Pharma, LP*, 219 L.Ed. 2d 721, 2024 U.S. LEXIS 2848 (6/27/24), at *7-8. In order for an action by the Bankruptcy Court to be authorized, it must grounded in those provisions. In this case, the Bankruptcy Court cut off the rights of third parties in order to protect a non-debtor. This was not authorized by the Bankruptcy Code and should be reversed.

B.    The Final Cash Collateral Order Released Third Party Rights

The Final Cash Collateral Order contained two improper provisions. First, it limited the universe of parties who could object to the claim of National Bank of Kuwait to the Chapter 11 Trustee. This provision violates 11 U.S.C. §502(a) which provides that a claim is deemed allowed unless a "party in interest" objects. The term "party in interest" is a broad term which includes "debtors, creditors, trustees, indenture trustees, and equity security holders among the parties entitled, e.g., to notice of proceedings in the case."

*Kipp Flores Architects, LLC v. Mid-Continent Cas. Co.*, 852 F.3d 405 (5th Cir. 2017). As a creditor, Appellant was a party in interest entitled to object to the claim of National Bank of Kuwait.

Second, it deemed that National Bank of Kuwait had a "valid, enforceable and properly perfected" lien in the real property and in the rents. The order did not allow for any challenge to this status. This provision affected 2425 WL, LLC because it also held a lien on the property. Under 28 U.S.C. §157(b)(2)(K) "determinations of the validity, extent, or priority of liens" is defined as a core proceeding. As a general rule, a party has standing "if the plaintiff has alleged such a personal stake in the outcome of the controversy as to warrant his invocation of federal jurisdiction and to justify exercise of the court's remedial powers on his behalf." *Friends of the Earth, Inc. v. Laidlaw Environmental Services, Inc.,* 528 U.S. 167, 180-81 (2000). Appellant was a party with standing to challenge the lien of National Bank of Kuwait because it held a junior lien on the property.

     C.    The Relief Granted to the Bank Was Not Allowed in Connection with a Request for Use of Cash Collateral

The Trustee and National Bank of Kuwait claimed that these provisions were necessary to gain the bank's consent to use of cash collateral. However, just because a creditor demands certain concessions does not mean that they are lawful. 11 U.S.C. §363(c)(2) allows use of cash collateral if the affected

party consents or if the court "authorizes such use, sale or lease in accordance with the provisions of this section." The standard for use of cash collateral is whether the trustee has provided "adequate protection." 11 U.S.C. §363(e). Adequate protection is defined as requiring the trustee to make cash payments, providing an additional or replacement lien to the extent that use of cash collateral "results in a decrease in the value of such entity interest in such property" or " "granting such other relief . . . as will result in the realization by such entity of the indubitable equivalent of such entity's interest in such property." 11 U.S.C. §361. The Final Cash Collateral Order granted National Bank of Kuwait replacement liens and thus provided adequate protection. Notably, Section 361 does not provide for eliminating the rights of third parties under the Bankruptcy Code.

> D.    The Final Cash Collateral Order Did Not Provide for a Challenge Period

A practice has developed to restrict the right to challenge a creditor's lien during a "challenge period." *E.g., In re Sanchez Energy Corp.*, 2023 Bankr. LEXIS 73 (Bankr. S.D. Tex. 2023). A challenge period is a period of time in which a party in interest must challenge a lender's lien or claim or have the claim or lien deemed allowed. While a "challenge period" is not provided by the Bankruptcy Code, it at least satisfies the requirements of due process by allowing parties an opportunity to protect their rights even if during an

abbreviated period of time.  The Final Cash Collateral Order in this case did not constitute a proper challenge period since it eliminated the rights of all parties in interest to challenge the liens and claims of National Bank of Kuwait other than the Trustee.

E.      The Final Cash Collateral Order Violates Purdue Pharma

The Supreme Court has recently held that non-consensual third party releases are not allowed by the Bankruptcy Code. *Harrington v. Purdue Pharma, supra*. In *Purdue Pharma*, the Sackler family sought a release of claims of creditors against it for wrongdoing in connection with the opioid epidemic.  The release was defended on the basis that it was necessary to make the plan work and would provide a greater return to creditors than if the release was not granted.  The Supreme Court was not impressed. Justice Gorsuch found that nothing in the Bankruptcy Code authorized granting a release to a party who had not filed bankruptcy and subjected their assets to the bankruptcy process.  He rejected the argument that 11 U.S.C. §1123(b)(6), which allowed "any other appropriate provision not inconsistent with the provisions of this title" allowed a form of relief completely unlike any other provision of the Bankruptcy Code.  He also rejected the argument that the third-party release was different from a bankruptcy discharge and therefore permissible.  He stated "(d)escribe the relief the Sacklers seek how you will,

nothing in the bankruptcy code contemplates (much less authorizes) it." 219 L.Ed2d at 737.

While the relief granted to the National Bank of Kuwait is not a third party release *per se*, it shares the same infirmity as the relief sought by the Sackler family. It takes away rights granted in the Bankruptcy Code to all parties in interest, a class which includes Appellant. It does so without their consent and indeed over their objection. Finally, it is not authorized by any provision of the Bankruptcy Code.

## Conclusion

This Court should reverse the Final Cash Collateral Order to find that paragraphs 3(a) and 3(b) are not binding on any party other than the Trustee. While the Trustee may make an agreement subject to court approval, he may not bargain away the rights of third parties. As a result, the Final Cash Collateral violated the Bankruptcy Code and should be reversed.

Respectfully submitted,

**BARRON & NEWBURGER, P.C**
7320 N. MoPac Expwy., Suite 400
Austin, Texas 78731
(512) 649-3243
(512) 476-9253 (Facsimile)

/s/ Stephen W. Sather

By: _____

Stephen W. Sather
Texas Bar No: 17657520
ssather@bn-lawyers.com

ATTORNEYS FOR 2425 WL, LLC

## <u>CERTIFICATE OF SERVICE</u>

By my signature blow, I hereby certify that a true and correct copy of the foregoing was sent via first class mail, postage prepaid, this 18th day of July, 2024 to the following:

*<u>/s/Stephen W. Sather</u>*
Stephen W. Sather

United States Bankruptcy Court
Southern District of Texas

**ENTERED**

April 05, 2024

Nathan Ochsner, Clerk

## IN THE UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| GALLERIA 2425 OWNER, LLC, | ) |  |
|  | ) | Case No. 23-34815 |
| Debtor. | ) |  |
|  | ) |  |

## FINAL ORDER AUTHORIZING THE TRUSTEE TO USE CASH COLLATERAL

Before the Court is the Emergency Motion of the Chapter 11 Trustee for Interim and Final Orders Authorizing the Use of Cash Collateral (the "Motion").[1] In the Motion, the Trustee requested, inter alia, entry of this final order (this "Order") pursuant to sections 105, 361, and 363 of title 11 of the United States Code (the "Bankruptcy Code") and in accordance with Rules 2002, 4001, and 2014 of the Federal Rules of bankruptcy Procedure (the "Bankruptcy Rules"), authorizing the Debtor to use cash collateral as set forth herein. The Court, having considered the Motion, any objections thereto, and the evidence presented or proffered and the statements and representations of the parties on the record at a hearing on the Motion; and any objections to the motion having been resolved or overruled; and, after due deliberation and consideration, hereby makes the following findings of fact and conclusions of law:

A.  *Chapter 11 Case*. On December 5, 2024, (the "Petition Date"), Galleria 2425 Owner, LLC (the "Debtor") filed a voluntary petition for relief with this Court under chapter 11 of the Bankruptcy Code initiating the above-captioned chapter 11 case (the "Chapter 11 Case").

B.  *Appointment of Chapter 11 Trustee*.  On February 9, 2024, the Court entered an order appointing Christopher R. Murray as the chapter 11 trustee (the "Trustee") in this case. The

---

[1]  All capitalized terms used but not defined herein shall have the same meaning ascribed to them in the Motion.

Trustee is the sole representative of the bankruptcy estate (the "Estate") created by the commencement of the Chapter 11 Case.

        C.     *Cash Collateral.*  The National Bank of Kuwait, S.A.K.P. New York Branch ("NBK"), asserts security interests and liens (the "NBK Liens") in property of the Estate, including without limitation, (a) deposit accounts held by the Estate, (b) any funds received by the Estate on account of rents from the real property located at 2425 West Loop South, Houston, TX 77027 (the "Premises"), and (c) the Premises. To the extent the security interest is valid, such collateral and any proceeds thereof constitute cash collateral as that term is defined by Bankruptcy Code § 363(a) (the "Cash Collateral").

        D.     *Immediate Need for Use of Cash Collateral*. The Trustee has an immediate and critical need to use the Cash Collateral in order to preserve and maximize the value of the Estate. Without the use of the Cash Collateral, the Premises would be at risk of losing substantial value to the detriment of the Estate and all claimants against the Estate.

        E.     *Conditional Consent to Use Cash Collateral*. Subject to the agreements reflected in this Order, NBK has consented to the Trustee's use of the Cash Collateral set forth in the budget attached to this Order as Exhibit A (the "Budget").

        F.     *Good Cause/Fair and Reasonable Terms*. The Trustee has shown good cause for the entry of this Order. Among other things, the entry of this Order will allow the Trustee to preserve the value of the Premises for the benefit of the Estate and claimants thereof. The use of Cash Collateral authorized hereunder is in the best interest of the Estate and will provide the Estate with the necessary liquidity to avoid immediate and irreparable harm and preserve and maximize the value of the Estate. The terms and conditions on the use of Cash Collateral, the security interests,

liens, rights and priorities granted to NBK, and the other agreements of the Trustee on behalf of the Estate provided for under this Order are fair and appropriate under the circumstances.

G.  *Jurisdiction and venue*: This Court has core jurisdiction over the Chapter 11 Case, the Motion, and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Reference from the United States District Court for the Southern District of Texas, dated May 24, 2012. Consideration of the Motion constitutes a core proceeding as defined in 28 U.S.C. § 157(b)(2). The Court may enter a final order on the Motion consistent with Article III of the United States Constitution. Venue for the Chapter 11 Case and the Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

H.  *Notice.* The trustee served copies of the Motion and notice of the hearing thereon to all parties entitled to such notice in compliance with Bankruptcy Rules 2002, 4001, 9014, and the Bankruptcy Local Rules for the Southern District of Texas, including: (a) the Office of the United States Trustee for Region 7, (ii) those creditors holding the twenty (20) largest unsecured claims against the Estate, (iii) the secured parties of record, and (iv) each party on the creditor matrix in the Chapter 11 Case. Under the circumstances, such notice of the Motion and the hearing thereon is due, proper, and sufficient and complies with Bankruptcy Rule 4001 and the Bankruptcy Local Rules.

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:**

1.  *Motion Granted*. The motion is GRANTED as set forth herein on a final basis. Any objections to the Motion or the entry of this Order that have not been previously resolved or withdrawn are hereby overruled on their merits.

2.    *Conditional Use of Cash Collateral*. The Trustee is hereby authorized to use Cash Collateral to pay the items set forth in the Budget and up to the respective aggregate amount of disbursements set forth in the Budget for any week, provided that (a) the Budget shall have a permitted variance of 10% per line item and 5% of the overall amount and (b) amounts set out in the Budget shall accumulate such that the Trustee may pay all amounts provided for in the Budget notwithstanding that a budgeted expense becomes due and payable at a different time than is set out in the Budget. The Trustee shall not use, sell, or expend, directly or indirectly, the Cash Collateral except pursuant to the Budget, absent written agreement of NBK.

3.    *Stipulations and Agreements*. In consideration for the relief granted in this Order, the Trustee, on behalf of the Estate, and NBK stipulate and agree to the following:

a.    *NBK Claim*. On May 23, 2018, the Debtor issued a note to NBK in the amount of $51,675,000.00 (the "NBK Note"). Subject to any claims, offsets, or affirmative defenses to the NBK Note or the Debtor's obligations thereunder, NBK was entitled to $63,552,988.00 under the NBK Note on the Petition Date (the "NBK Claim"). The Trustee, on behalf of the estate, reserves all rights to challenge the amount or allowance of the NBK Claim, or seek to equitably subordinate that claim, up to ten (10) days before a hearing on any plan of reorganization for the Debtor is first scheduled for hearing with any such challenge to be heard and determined in connection with that hearing.

b.    *NBK Liens and Security Interests*. The Debtor's obligations to NBK are secured pursuant to the Deed of Trust, Assignment of Leases and Rents and Profits, Security Agreement and Fixture filing (the "NBK Deed of Trust") and Absolute Assignment of Leases and Rents (the "NBK Assignment of Rents"), both of

which were filed in the real property records of Harris County, Texas, prior to the Petition Date. NBK has a valid, enforceable, and properly perfected security interest in the Premises pursuant to the NBK Deed of Trust that has priority over any other lien or security interest, except any lien pursuant to Chapter 32 of the Texas Tax Code. NBK also has a valid, enforceable, and properly perfected security in the rents from leases of the Premises pursuant to the Deed of Trustee and the NBK Assignment of Rents. The value of NBK's collateral does not exceed the amount it is owed.

c. *Third-Party Management*. The Trustee shall take all appropriate steps to engage Jones Lang LaSalle Americas, Inc. as property manager ("JLL") to oversee the day-to-day operations of the Premises. NBK agrees to JLL's retention as property manager and further agrees to fund, either through the use of Cash Collateral or through separate payment by NBK or advance to the Trustee pursuant to a further order of the court, the fees, costs and expenses owed to JLL under any Management Agreement or similar agreement entered into by JLL and the Trustee relating to the management of the Premises. Any amount paid directly by NBK, or any amount advanced to the Trustee pursuant to a further order of the court, shall be added to the amounts owed to NBK and secured by a first priority lien on the estate's assets (to which NBK consents).

d. *Post-Petition Financing*. The Trustee and NBK will negotiate in good faith to reach an agreement on post-petition financing to allow the Trustee to administer the Chapter 11 Case (the "Post-Petition Financing"). Notwithstanding the preceding sentence, nothing in the Motion, this Order, or the communications

among the Trustee and NBK to date shall (i) obligate the Trustee or NBK to agree to any Post-Petition Financing or (ii) prevent the Trustee from soliciting or agreeing to Post-Petition Financing from any other party.

e. *Milestones*. The Trustee shall abide by the following case milestones (the "Milestones"):

    i. On or before March 22, 2024, the Trustee shall file a motion for the approval of JLL's retention as property manager for the Premises.

    ii. On or before April 5, 2024, the Trustee shall file a motion seeking the approval of a process to market and sell the Premises pursuant to Bankruptcy Code § 363(b) (the "Sale Motion"). The Sale Motion shall include provisions for an auction of the Premises (the "Auction") no later than July 1, 2024, and a hearing to approve the sale of the Premises (the "Sale Hearing") no later than July 8, 2024. Notwithstanding the preceding sentence, to the extent that the Court approves a date for the Auction or sets the Sale Hearing on a date that is within fourteen (14) days of the date requested, this Milestone shall be deemed met.

f. *Remedies for Failure to Meet Milestones*. To the extent that the Trustee fails to meet the Milestones provided for in this Order, the Trustee's authority to use the Cash Collateral shall immediately terminate; *provided that* (i) the Trustee and NBK may agree to an extension of any Milestone by written agreement (including by email among their respective counsel) without the need for further order of the Court and (ii) the Court may extend any Milestone under the standard applicable to Bankruptcy Rule 9006(b).

g. *NBK Lien Subject to Carve-Out*. Subject to the closing of a sale of the Premises after a Sale Hearing, NBK agrees that the NBK Lien shall be subject to the Carve-Out (defined below).

4. _Effect of Stipulations and Agreements_. The Trustee's acknowledgments and stipulations in this order shall be binding on the Trustee, the Estate, and their respective representatives, successors, and assigns in all circumstances. The stipulations contained in this Order shall be binding upon all other parties in interest and all of their respective successors and assigns.

5. _Adequate Protection—Replacement Liens_. As partial adequate protection for any diminution in value of NBK's interest in the Cash Collateral ("Diminution in Value"), NBK is granted a replacement lien (the "Replacement Lien") in all currently owned or hereafter acquired property of the Estate excluding avoidance or other causes of action arising under chapter 5 of the Bankruptcy Code, and all proceeds and products of the foregoing including avoidance or other causes of action arising under chapter 5 of the Bankruptcy Code (collectively, the "Adequate Protection Collateral"). The Replacement Lien granted pursuant to this Order shall have the same priority as NBK's prepetition liens but shall be subject to the Carve-Out (defined below).

6. _Adequate Protection—Super-Priority Administrative Claim_. As additional partial adequate protection for the Trustee's use of the Cash Collateral, to the extent of any Diminution in Value and a failure of the other adequate protection provided by this Order, NBK shall have an allowed super-priority administrative expense claim against the Estate as provided in and to the fullest extent permitted by sections 503(b) and 507(b) of the Bankruptcy Code or otherwise (the "Adequate Protection Super-Priority Claim"). The Adequate Protection Super-Priority Claim shall be subject to the Carve-Out (defined below).

7. *Adequate Protection—Information Rights*. As additional partial adequate protection for the Trustee's use of the Cash Collateral, the Trustee agrees that NBK shall be entitled to receive, and shall receive at or around the same time as the Trustee, all reports, summaries, analyses, schedules, invoices, receipts, notices, and all other similar information provided to the Trustee by JLL. The Trustee shall also direct JLL to provide NBK with copies of any letter of intent, term sheet, and/or draft lease the Trustee proposes to enter into with a prospective tenant of the Premises; all such information shall be provided to NBK at least 14 days prior to the Trustee's entry into any such lease.

8. *Carve-Out*. The NBK Lien, Replacement Lien, Adequate Protection Super-Priority Claim shall be subject to the following (the "Carve-Out"): (a) unpaid fees payable to the Clerk of the Court or the United States Trustee; (b) court-approved administrative expense claims of estate professionals, employed pursuant to an order of this Court (collectively, the "Estate Professionals"), for incurred by unpaid fees, expenses, and other costs in an amount not to exceed $260,000.00, provided such fees, costs, and expenses of counsel are specifically approved by an order of the Court, less any amounts paid by the Estate pursuant to the Budget, provided, further, however, that the Carve-Out related to fees and expenses incurred by Estate Professionals relating to any investigation concerning any claims held or potentially held by the Estate against NBK shall not exceed $50,000 and the Trustee may not otherwise use any Cash Collateral to investigate or pursue any claim against NBK; and (c) court-approved compensation to the Trustee in an amount not to exceed the amounts set forth in Bankruptcy Code § 326(a) less any amounts paid by the Estate pursuant to the Budget.

9. *Professional Fee Escrow*. The Trustee is authorized to transfer cash on hand from time to time in the amount equal to the total budgeted fees and expenses of Estate Professionals to

be incurred under the Budget and Carve-Out (plus any true-up necessary for prior periods) into a segregated account maintained by the Trustee (the "Professional Fee Escrow"). The Trustee shall be authorized to use funds held in the Professional Fee Escrow to pay Professional Fees as they become allowed and payable pursuant to the Bankruptcy Code, Bankruptcy Rules, Bankruptcy Local Rules, and any interim or final orders of the Court; *provided that* the Trustee's obligations to allowed compensation and reimbursement to Estate Professionals shall not be limited or deemed limited to the funds held in the Professional Fee Escrow. Funds in the Professional Fee Escrow shall be held in trust and available solely to pay allowed compensation and reimbursement to Estate Professionals. NBK and any other secured party with a lien on the funds transferred to the Professional Fee Escrow shall retain an automatically perfected and continuing security interest in any residual interest in the Professional Fee Escrow available following the satisfaction in full of all obligations to Estate Professionals.

10. _Ad Valorem Tax Liens:_  Notwithstanding any other provisions included in the Interim Order or the Final Order, or any agreements approved by the Final Order, any prepetition and postpetition ad valorem tax liens under Chapter 32 of the Texas Tax Code (each a "Tax Lien"), specifically including the Tax Liens held by the City of Houston, Houston ISD, and Houston Community College System (collectively, the "Houston Taxing Authorities") and Harris County, Harris County Flood Control District, Port of Houston Authority, Harris County Hospital District, and Harris County Department of Education (collectively, the "Harris County Taxing Authorities", and together with the Houston Taxing Authorities, the "Taxing Authorities"), shall not be primed by nor made subordinate to any liens granted to any party under this order. In the event of a sale of any assets which are encumbered by a Tax Lien, such Tax Lien shall attach to the proceeds of the sale of the assets to the same extent and with the same priority as such Tax Liens attached to

the Debtor's assets immediately prior to the closing of such sale, and the Trustee or any successor to the Trustee shall not pay to NBK any proceeds from the sale of any assets subject to a valid, first priority liens of the Taxing Authorities.

11. *Modifications to Budget*. Nothing in this Order shall prevent the Trustee and NBK from agreeing to consensual modification to the Budget, provided that such modifications do not reduce the total amount of Cash Collateral that the Estate may use.

12. *Further Actions*. The Trustee and NBK are hereby authorized to enter into all agreements pursuant to the terms of this Order necessary to allow the Trustee to use Cash Collateral subject to the terms of this Order in the amounts and for the expenses set forth in the Budget including, without limitation, fees, costs and expenses owed to JLL.

13. *Retention of Jurisdiction*. This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation of this Order.

Signed: April 05, 2024

Jeffrey P. Norman
United States Bankruptcy Judge