```
 1                    UNITED STATES BANKRUPTCY COURT
                       SOUTHERN DISTRICT OF TEXAS
 2                          HOUSTON DIVISION

 3                                )  CASE NO: 23-34815-jpn
                                  )
 4                                )  Houston, Texas
      GALLERIA 2425 OWNER, LLC.   )
 5            Debtor.             )  Friday, April 5, 2024
                                  )
 6                                )  9:00 AM to 10:16 AM
      -----------------------------)
 7

 8                              TRIAL

 9          BEFORE THE HONORABLE JEFFREY P. NORMAN
                 UNITED STATES BANKRUPTCY JUDGE
10

11    APPEARANCES:

12    For the City of Houston,  JEANNIE LEE ANDRESEN
      et al.:                   Linebarger Goggan Blair & Sampson
13                              LLP
                                P.O. Box 3064
14                              Houston, TX 77253

15    For Galleria 2425         REESE W. BAKER
      Owner LLC:                JACK ROSE
16                              Baker & Associates
                                950 Echo Lane, Suite 300
17                              Houston, TX 77024

18    For Christopher R.        R.J. SHANNON
      Murray:                   Shannon & Lee LLP
19                              2100 Travis Street, Suite 1525
                                Houston, TX 77002
20
      For 2425 West Loop LLC:   ROBERT MACNAUGHTON
21                              Porter & Powers PLLC
                                5900 Memorial Drive, Suite 305
22                              Houston, TX 77027

23                              STEPHEN WAYNE SATHER
                                Barron Newburger PC
24                              7320 N Mopac Expressway, Suite 400
                                Austin, TX 78731
25
```

| 1 | For the National Bank | PATRICK FITZMAURICE |
|---|---|---|
|   | of Kuwat, SAKP, New | Pillsbury Winthrop Shaw |
| 2 | York Branch: | Pittman LLP |
|   |   | 609 Main, Suite 2000 |
| 3 |   | Houston, TX 77002 |
|   |   | 713.276.7639 |
| 4 |   |   |
|   | Court Reporter: | TRACEY CONRAD |
| 5 |   |   |
|   | Courtroom Deputy: | TRACEY CONRAD |
| 6 |   |   |
|   | Transcribed by: | Veritext Legal Solutions |
| 7 |   | 330 Old Country Road, Suite 300 |
|   |   | Mineola, NY 11501 |
| 8 |   | Tel: 800-727-6396 |

```
 9

10
     Proceedings recorded by electronic sound recording;
11   Transcript produced by transcription service.

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1                              INDEX

 2   WITNESSES              DIRECT    CROSS    REDIRECT    RECROSS

 3   CHRISTOPHER MURRAY       27      31,34,37

 4

 5

 6

 7

 8

 9   EXHIBITS                                            RECEIVED

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
1              HOUSTON, TEXAS; FRIDAY, APRIL 5, 2024; 9:00 AM

2                           (Call to Order)

3         THE COURT:  Good morning.  It's 9 a.m. and we're

4    on the record for April 5, 2024, initial matters scheduled

5    for 9 a.m.  That is the case of Galleria 2425 Owner, LLC,

6    Case No. 23-34815.  Appearances of counsel, please.

7         MR. SHANNON:  Good morning, Your Honor.  Good

8    morning, Your Honor.  R.J. Shannon on behalf of the Trustee,

9    Christopher Murray.  I see my partner, Kyung Lee, is also on

10   the line and on the video.  And Mr. Murray I see is on video

11   and I believe on the telephone.

12        THE COURT:  Yes.  Thank you, sir.

13        MR. BAKER:  Your Honor, Reese Baker, on behalf of

14   Galleria 2425 Owner.

15        MR. ROSE:  Good morning, Your Honor.  Jack Rose on

16   behalf of 2225 WL, LLC.

17        MR. FITZMAURICE:  Good morning, Your Honor.

18   Patrick Fitzmaurice from Pillsbury --

19        THE COURT:  Oh, hold on one second.  Mr. Rose, I

20   don't see you on the screen anywhere.

21        MR. ROSE:  I'm next to Mr. Baker over here, Your

22   Honor.

23        THE COURT:  Okay.  All right.  I apologize.  I

24   didn't see you in the background.  All right, so ahead.

25   Who's next?
```

```
 1                 MR. FITZMAURICE:  Thank you, Your Honor.  Patrick
 2     Fitzmaurice from Pillsbury for National Bank of Kuwait, the
 3     Debtors seeking secured creditor.  With me are my partners,
 4     Charles Conrad, Andrew Troop and (indiscernible)
 5                 THE COURT:  Thank you.
 6                 MR. SATHER:  Your Honor, Stephen --
 7                 MS. ANDRESEN:  Good morning --
 8                 MR. SATHER:  Go ahead.
 9                 MS. ANDRESEN:  Lee Andresen for City of Houston --
10     Houston Community College and the ISD.
11                 THE COURT:  Thank you, Ms. Andresen.
12                 MR. SATHER:  Stephen Sather, appearing for 2425
13     WL, LLC.
14                 MR. MACNAUGHTON:  Robert MacNaughton --
15                 THE COURT:  All right --
16                 MR. MACNAUGHTON:  Sorry, Your Honor.  Robert
17     MacNaughton for 2425 West Loop, LLC, as Tenant.
18                 THE COURT:  All right.  Mr. MacNaughton, I don't
19     see you on the screen here.
20                 MR. MACNAUGHTON:  I'm on -- okay, I don't know how
21     to turn the camera on.
22                 THE COURT:  Well, we could figure that out.  We've
23     been doing this for a long time, and I'm always confused by
24     lawyers who don't know to turn on a camera.  All right.
25     I'll go -- let me go to Mr. Shannon first.  It's your
```

1   Motion.  There's been quite a bit of activity in the case,

2   which I've read.  So, why don't you give me a status of

3   where we are and then we'll go from there?

4         MR. SHANNON:  Yes, Your Honor, and actually we're

5   here on two Motions today.  We're here on the Final Hearing

6   of the Trustee's Cash Collateral Motion that's at ECF 133.

7   And then at the Interim Hearing, you also set forth a Stay

8   of Trustee's Motion for the Order (indiscernible) to the

9   agreement with (indiscernible) and that's at ECF No. 145.

10   So, with that, Judge, I'll pull up the cash collateral

11   first.  There's going to be -- the Trustee's Motion was

12   filed at Docket No. 133.  We had an Interim Hearing on, I

13   believe, March 22nd, and there were three objections filed

14   to the Trust including, the taxing authorities at ECF 134,

15   there was 2425 WL, LLC at Docket No. 167.  Debtor also filed

16   an Objection at ECF No. 168.  There were two replies that

17   were filed in this Court.  The Trustee's side

18   (indiscernible) ECF 177.  The National Bank of Kuwait filed

19   theirs in response to the objections.  We would call that a

20   reply (indiscernible) 178.

21         Since all that's been going on, Judge, there has

22   significantly reduced (indiscernible) the disputes.  The

23   Trustee filed a Notice of Revised Proposed Order at ECF No.

24   172.  I noted that redline it had a revised Proposed Order

25   that related to cash collateral.  (indiscernible) resolve

1  the taxing authority's objection that the language regarding

2  the taxing authority was negotiated with them.  They agreed

3  to it, National Bank of Kuwait agreed to it and no one at

4  this point that I know of, objected to that language.  It

5  also resolved some, but not all, of the Debtor's objection

6  in 2425 (indiscernible) objection.  But there are some

7  issues that remain (indiscernible) live dispute, so it was a

8  revised proposed Order that the Debtor and 2325 WL filed

9  yesterday at ECF No. 179.  And there's only -- it's to the

10  (indiscernible) filing date (indiscernible) redline.  It

11  reflects the changes that were in the Trustee's revised

12  proposed Order and the additional language that the Debtors

13  of 2425 WL say are necessary.

14      That additional language is still disputed and

15  this morning, I filed -- just to be clear, (indiscernible)

16  was the dispute one.  I filed a (indiscernible) just

17  breaking out the most particular changes that, as far as I

18  can tell, are disputed and that would be ECF No. 182 that

19  clarifies this (indiscernible) the Trustee and the -- the

20  cash collateral motion submitted to the Agreement with JLL.

21  As far as I'm concerned, there is no remaining dispute and

22  if it makes sense to the Court (indiscernible) the other

23  parties divisions of what I just said before we go into any

24  matter of arguments.  And assuming there is no disputes with

25  JLL's Agreement Motion, we'd go forward with that one first

1   because there is no dispute (indiscernible).

2          THE COURT:  All right, Mr. Shannon, I looked at

3   182 and there's blue-line and red-line.  Do you want to

4   explain the blue-line and the red-line to me in 182?

5          MR. SHANNON:  Yes, Judge.  So, the blue ones are

6   just the additions.  So, they should be blue and underlined.

7   So, this is the language that the Debtor and 2425 WL, LLC

8   wanted to add to the Sub-C proposed Order.  And the red,

9   that's the strike language.

10         THE COURT:  Okay, and you're opposed to the

11  addition of that language, correct, and striking that?

12         MR. SHANNON:  Yes.  That's right.  I can explain

13  now why, if you want, but it could be --

14         THE COURT:  Well, let me hear from the other

15  parties so I can (indiscernible) and then I'll go back.  I

16  just wanted to understand what that exhibit was.  And I'll

17  go first to Mr. Baker.

18         MR. BAKER:  Your Honor, the Exhibit in blue sets

19  were the provisions that we believe we added to strike out

20  in red.  There's nothing demonstrating any value at this

21  point in time, so we believe the blue provisions should be

22  added to the Order.  And Mr. Rose may have some other

23  comments, too.

24         THE COURT:  So, but bear with me for one second.

25  Okay, so you want to add the blue language and then you want

1    to strike the red language.  Am I correct in that?

2          MR. BAKER:  Yes.

3          THE COURT:  All right.  So, let me go around the

4    horn.  I'll come back to you, Mr. Rose, in just a second.

5    Thank you.  Let me know now, Mr. Sather?

6          MR. BAKER:  Thank you, Your Honor.  Mr. Rose will

7    be arguing on behalf of my client, 2425 WL.  I'm going to

8    agree with the proposed Order that was uploaded by our side.

9          THE COURT:  All right.  So, I'm going to let Mr.

10    Rose speak for you and basically, at this point in time, not

11    come back to you.  So, thank you so much.  All right, so Mr.

12    Rose, now that I know that Mr. Baker is not going to say

13    anything, please tell me what you think.

14          MR. ROSE:  I -- Your Honor, we agree with Mr.

15    Baker as to the language and confirm agreement with

16    (indiscernible).

17          THE COURT:  All right.  Thank you.  Then, let me

18    go now to Ms. Andresen, it's the Order that Mr. Shannon said

19    would absolve your objections?

20          MS. ANDRESEN:  (indiscernible) and I can withdraw

21    our objection.

22          THE COURT:  And just so the record is clear,

23    that's ECF 172?

24          MS. ANDRESEN:  I reviewed that.  I also reviewed -

25    - there was a more recent revised proposed/Final Order filed

1    at 179.  We don't have it (indiscernible).

2         THE COURT:  That's the Debtor's version, I think.

3    If I remember correctly.

4         MS. ANDRESEN:  Right.  We reviewed both and there

5    is no objection to either order.

6         THE COURT:  All right.  So, let me go to Mr.

7    Fitzmaurice.

8         MR. FITZMAURICE:  Thank you, Your Honor.  We do

9    oppose the addition to the blue and the strike out in red,

10   referring to the demonstrative exhibit at ECF 182.

11        THE COURT:  All right.  Mr. MacNaughton?

12        MR. MACNAUGHTON:  Yes, Your Honor.  Referring to

13   Exhibit 182, we agree and have no problems with the Order

14   except for one suggestion and Section 3A(ii), the quote

15   adding the language that says, "So long as it is stated in

16   the adversary proceedings", we believe it should say

17   "current adversary proceedings".  We don't want to see

18   additional adversary proceedings added and added and added

19   so there's never a sale.

20        THE COURT:  And again, sir, so I can write that

21   down, that's what paragraph?

22        MR. MACNAUGHTON:  It's 3C(ii), the blue line

23   addition to it on the Trustee's added (indiscernible).

24        THE COURT:  So, the blue language has further

25   provided nothing here and shall affect the rights to the

1    parties in the adversary or if they turn adversary?

2              MR. MACNAUGHTON:  Yes, Your Honor.

3              THE COURT:  All right.  That's fine.  That tells

4    me what I needed to know.  All right.  Now, I think that's

5    everyone.  Mr. Shannon, I don't think I missed everyone.

6    So, do you want to go ahead and argue and then present any

7    evidence?  Or whatever you want to do relative to the

8    contested language.

9              MR. SHANNON:  You know, Judge, I think it makes

10   sense to talk about the JLL Agreement Motion first since

11   that (indiscernible) the objection to that.

12             THE COURT:  I'm sorry.  You went in and out.  I

13   didn't think I understood what you said.

14             MR. SHANNON:  Apologies, Judge.  The answer to

15   that is yes, but I think it makes sense to talk about the

16   JLL Agreement Motion at ECF 145 first.

17             THE COURT:  All right.

18             MR. SHANNON:  And I just don't believe --

19             THE COURT:  Go ahead.

20             MR. SHANNON:  I don't believe there's any

21   objection to that.  So, it would appear, Judge, that the

22   Trustee filed the JLL Agreement Motion at Docket 145.  They

23   checked out the reasons why the Trustee needs to engage JLL

24   as the property manager.  It very clearly exercised that the

25   Trustee didn't use judgment on who he desires to have be the

```
 1    property manager.  The Trustee is not seeking to

 2    (indiscernible) in a professional (indiscernible), is not

 3    seeking to retain JLL of the professional (indiscernible)

 4    day-to-day management of the property, including the

 5    Trustee's control (indiscernible) professional judgment

 6    related to the Chapter 11 case.  And (indiscernible)

 7    objection to that Motion and so, the Trust would ask the

 8    Court to enter the proposed Order at 145-2.  And, Judge,

 9    we'd be happy to address that.

10         THE COURT:  Let me go on the horn and see if there

11    are any objections to them and I'll start again, with Mr.

12    Baker.  Any objections to the Order at 145-2?

13         MR. BAKER:  No, Your Honor.  We don't have an

14    objection as far as the Agreement remain on the cash

15    collateral.

16         THE COURT:  All right, Mr. Rose, I'll go to you.

17    Do you have any objections?

18         MR. ROSE:  We have no objections, Your Honor.

19         THE COURT:  Ms. Andresen?

20         MS. ANDRESEN:  No objection, Your Honor.

21         THE COURT:  Mr. Rose?  (indiscernible) Mr. Rose.

22    How are you?  See, Mr. Fitzmaurice?

23         MR. FITZMAURICE:  No objection, Your Honor.

24         THE COURT:  And Mr. MacNaughton?

25         MR. MACNAUGHTON:  No objection.
```

```
 1          THE COURT:  All right.  Then I will grant ECF No.
 2    145, which is the Motion for Entry of the Order as to
 3    Property Manager and Final Order at 145-2, since we are
 4    concluded with the hearings today.  All right, Mr. Shannon,
 5    we're back at collateral.
 6          MR. SHANNON:  All right.  Thank you, Your Honor.
 7    Again, the Motion was filed at Docket No. 133.  And
 8    ultimately, since there was no dispute from any party that
 9    the Trustee (indiscernible) to use the cash to preserve the
10    value of this estate, there's not anything that today the
11    National Bank of Kuwait had the first priority lien
12    (indiscernible) about (indiscernible) potential for
13    (indiscernible) assertion that maybe that being or maybe his
14    claim should be (indiscernible).  That puts (indiscernible).
15    There might be claims that (indiscernible).  But as was
16    stated (indiscernible).  In terms to the language at issue,
17    as (indiscernible), I just want to say, obviously the
18    Trustee, in an ideal world (indiscernible).  It would be
19    great to have no stipulations, to have NBK just agree that
20    the Trustee can use its cash collateral without any
21    conditions, without anything back (indiscernible) based.
22    The Trustee, in that situation, would be very happy.
23    Unfortunately, in the real world, that's not what secured
24    lenders (indiscernible) and it's not what the Bankruptcy
25    Code provides.  The Bankruptcy Code requires adequate
```

1    protection absent an agreement (indiscernible).

2         So, let's talk about the specific language with

3    respect to Paragraph A and what it provides is that -- let's

4    start with Paragraph 3.  It talks about the individual Note

5    and the situation as to the amount of that Note subject to

6    the claims, offsets or affirmative defenses that can be

7    (indiscernible).  And (indiscernible) by the Debtor, by all

8    the parties, that there are these other things that may

9    affect the ultimate allowable balance of (indiscernible).

10   Obviously, if the Trustee here is reserving all the right to

11   a percentage, all of it.  The official language wants to add

12   in that further, nothing herein shall affect the rights of

13   the parties and the adversaries as being 33-03263 and 24-

14   03043, those two adversary proceedings are the ones that

15   were filed by the Debtors that are new to the case,

16   challenging or asserting claims against NBK.  Defendant 1 is

17   an adversary proceeding initiated by 2425 WL, LLC, who can

18   be (indiscernible) NBK claim, and a number of certain claim

19   of fraud, as well, at that adversary proceeding.  First,

20   Judge, the Trustee would (indiscernible) language in the

21   abstract.  The problem is that NBK doesn't agree to it.  And

22   (indiscernible) apply to Paragraph 3B (indiscernible)

23   together and Paragraph 3B (indiscernible) same issue as a

24   related issue that the Debtor, NBK or the Debtor and 2425 WL

25   want to add language that, subject to the adversary

1    proceeding, NBK has a valid, enforceable, and properly

2    accepted security issues.  Therefore, we want to strike out

3    that the value of NBK's collateral should be amounted

4    (indiscernible).

5        Again, for both of those who (indiscernible) these

6    changes or (indiscernible) the changes, the Trustee didn't

7    necessarily have a problem with it, other than the fact that

8    NBK doesn't agree.  And there comes the problem, but right

9    now, there is not a clear path to the pending non-consensual

10   (indiscernible) of the cash collateral.  But given that the

11   Trustee has needed to establish that NBK is adequately

12   protected, and I'm not saying that's impossible, but it's

13   not clear how he could (indiscernible) and tell you.  It

14   would take a lot of work, it would take a lot of expense.

15   And (indiscernible) just talked to the estate

16   (indiscernible).

17       The second problem with the -- it's not entirely

18   clear why this language needs to be in here.  Just other --

19   the way that these provisions are already worded, that is

20   already clear.  Who owns (indiscernible) doesn't agree to

21   this language (indiscernible) that's the only reason I can

22   (indiscernible) for it and that the Debtor in 2425 WL that

23   (indiscernible) to be able to exercise control over

24   (indiscernible).  Other than that, I don't see

25   (indiscernible).  I'd point out, Judge, that NBK has

1    (indiscernible) pointed out in Docket No. 138, pointed out

2    that, according to Paragraph 6 here, "Although it's true

3    that the WL adversary proceeding should be dismissed, the

4    proposed Final Cash Collateral Order does not compel that

5    result." So, I just don't think that there's a problem

6    that's being solved by this language. I just don't think

7    it's an issue.

8             As far as the strike out that's requested, the

9    problem with indicating collateral not exceeding the amount

10   that is owed is beneficial to the estate. It means that NBK

11   isn't earning interest right now. There's not any natural

12   bridge that we get down to the end of this and I don't see

13   anything that's -- it's true that there's a collateral worth

14   $100 million and NBK has a $2 million plan that this

15   Stipulation right here is going to have a material effect.

16   What it does right now, is make sure that NBK does not get

17   any interest. This is a good thing for the estate. So that

18   changes Paragraph 3A. With respect to Paragraph 3E(2), that

19   one, the Trustee does disagree with and would not agree with

20   even if NBK would agree. This paragraph is about -- this is

21   one of the milestone provisions in the Final Cash Collateral

22   Order and this is the particular month and it's about the

23   Trustee's requirement to file a Motion (indiscernible) sale

24   process. (indiscernible) filing such a Motion and the

25   language they want to add and to say that "provided,

1    however, so long as any of the adversary proceedings are

2    pending, no auction shall occur." And the Trustee disagrees

3    with that, (indiscernible) that kind of limitation in

4    (indiscernible). The Trustee wants to go forward with the

5    sale and auction process and believes that it's necessary

6    and believes that it is in the best interests of the estate.

7         And I would point out that the milestone judge

8    requires the Trustee to file that Motion. (indiscernible)

9    could object to it. The Debtor in 2425 WL objects. The

10   Court could deny the Motion for the (indiscernible) and all

11   of that. And the Court could say he put this language in an

12   Order about the sale process. They could prove them at that

13   time. And so, just based on that, this language isn't

14   appropriate and that's even on top of the fact that NBK

15   doesn't agree to it and (indiscernible), we're not going to

16   go forward and say that (indiscernible) very difficult to

17   (indiscernible). So, to rest my argument, Judge, the

18   evidence that I want to present would just be that -- about

19   why -- I guess why (indiscernible) is ultimately necessary

20   for cash collateral. And (indiscernible), Court rules that

21   cash collateral and why it's not something to gamble with.

22         THE COURT: All right. Thank you, Mr. Shannon.

23   Let me go around and -- let me go around and get everyone's

24   comments on what you just said and then I'll let you

25   present. Mr. Baker, I'll go to you first.

1        MR. BAKER:  Your Honor, I'd like to defer and let
2    Mr. Rose respond for the parties.
3        THE COURT:  Mr. Rose, I'll let you respond for
4    2425 Owner, LLC and 2425 WL, LLC.  Go ahead, sir.
5        MR. ROSE:  Your Honor.  I believe that -- and I
6    don't know how this is come to right out and
7    (indiscernible).  The 800-pound gorilla in the room right
8    now is actually what's in those adversary proceedings.  And
9    that's what we're really talking about here, are third-party
10    releases.  Because this Cash Collateral Order is actually
11    seeking to take away the rights of these third parties and
12    to force the third-party claims under the Trustee.  And
13    they're seeking to say that the third parties do not have
14    the right to control their own claims.  And under the law of
15    this circuit, that's not permitted and that's under Next
16    Point Advisors, under Pacific Lumber, it's just simply not
17    permissible.  So, we have a violation of the Fifth Circuit
18    law.
19        Anyway, as we go through what's here today, you're
20    going to see that it's become very obvious that it's not
21    necessary in this case.  We've seen it before where banks
22    walk in and say, "If we don't have this, we're not going to
23    fund."  It's simply not true.  Banks fund really don't get
24    provisions in cash collateral orders all the time.  Well,
25    let's go through and see exactly what's in NBK's pleadings

1     that also show it's not there and also let's see why you

2     need third parties writing these actions because it does

3     enhance recovery.

4            So, looking at what's here, in Paragraph 4, NBK

5     responds, Your Honor.  They say that his claims are superior

6     and that only NBK -- I'm sorry, only the Trustee can bring

7     the claim (indiscernible) adjudication of rights because

8     Trustee stipulated it.  NBK's claims are superior to all

9     rights except for tax liens and affiliates.  I don't believe

10    that is actually the case.  And the Trustee should give any

11    party allowed to investigate the NBK claims on the exclusive

12    rights.  Why?  Because the Trustee doesn't have an ax to

13    grind and because this will preserve NBK's resources.  Where

14    in the Bankruptcy Code does it say that we're supposed to

15    preserve the resources of the lender?  There's nothing in

16    the Code that looks to preserve the lender's resources.

17           So, to move on, in Paragraph 8 of your -- we see

18    the budget that's provided is $50,000.  How is the Trustee

19    supposed to conduct an investigation and prosecute these

20    claims on a $50,000 budget?  So, you're taking two adversary

21    proceedings, removing it from the third parties and handing

22    it to the Trustee with a $50,000 budget and claiming they're

23    going to be effectively prosecuted.  Will all due respect,

24    that's nonsense.  What we're looking to do is shut down the

25    adversary proceedings and make sure they're never

1    prosecuted.  That's all that is, is an attempt to make sure

2    that these things never see the light of day.  And that's

3    what we've come down to.  It's also a violation of the Fifth

4    Circuit law.  It's not permissible, it can't be allowed to

5    go forward.  In other cases where third party claims were

6    allowed to go forward -- I'm not going to look right what's

7    before the Supreme Court right now.  I'm going to go to

8    Harrington v. Purdue.  Not once, but twice, we sold billions

9    of dollars from (indiscernible) billion dollars and recovery

10   increased when the third parties rolled out to move into the

11   position of conserving their claims and forcing the parties

12   to come to the table.  It's precisely for this reason that

13   third party releases are not permitted.  But what this

14   Circuit (indiscernible) than the other circuits.

15        Your Honor, moreover, where we seek to not allow –

16   – to forcibly take to not get the third-party releases, are

17   Paragraphs 6 and 7.  NBK tells us that they're going to be

18   filing Motions dismissed.  And they're easily dismissed,

19   these cases.  If that's the case, they're going to be

20   bringing this before you.  They'll dismiss the cases quickly

21   for you.  So, what's the issue?  Why should they be worried?

22   They'll just bring their Motion to Dismiss, they'll present

23   their evidence to you, the case will be dismissed, and they

24   should have those concerns.  They should be concerned about

25   anything going forward with the third parties.  They

1    shouldn't need this in the Cash Collateral Order.

2            Moving on to the last point I'd like to bring up,

3    Your Honor, is (indiscernible) and why shouldn't a sale be

4    permitted to go forward?  All real estate (indiscernible).

5    We're told that.  It's one of the first things you learn

6    when you take property law and (indiscernible).  This is

7    (indiscernible), probably more unique than most.  If the

8    property sold, it can never be replaced.  For that reason,

9    we need to hold up the sale until the adversaries are

10   complete.  Your Honor can enter a Scheduling Order.  It can

11   move forward with expedited discovery.  We can move these

12   things forward.  The Bankruptcy Courts are known for a

13   rocket docket.  We're willing to agree to move forward on

14   that basis.  We're willing to put this in your hands and to

15   go forward on that basis.  If NBK is going to do that, we

16   can make it happen fast.  So, we're looking to you to do

17   this.  They're telling us they can get it dismissed quickly

18   by going before Your Honor and having that done.  So, we're

19   taking this Order, we're proposing these provisions and

20   we're hoping to put this all before you.  We don't think

21   there should be an issue about it.

22           But currently, NBK has a lot of issues with it.

23   Your Honor, the law doesn't permit third party releases.

24   That's what this Order is asking for.  It's not permitted

25   under the law of this circuit.  They shouldn't be allowed to

1   give this guy third party releases to the Cash Collateral

2   Order.  We're not going to be presenting any -- we're not

3   going to be putting witnesses on, we're not going to be

4   presenting any evidence.  We believe this is a legal

5   argument based on the law of this circuit.  We've got the

6   law in our pleadings and that's the (indiscernible).

7           THE COURT:  All right.  Thank you, sir.  Ms.

8   Andresen, I'll go to you even though -- I assume that you

9   don't have any objection or anything to say?

10          MS. ANDRESEN:  That's right, Your Honor.  I have

11  no comments.  Thank you.

12          THE COURT:  Mr. Fitzmaurice, I think that you

13  probably have a lot to say.  So, I'll turn to you.

14          MR. FITZMAURICE:  Thank you, Your Honor.  With

15  respect to the last portion of the argument and the idea

16  that the provisions in Paragraphs 3A or 3B or 3B(2) include

17  releases of third party claims against the bank, I don't

18  know how else to say this, but directly, they just don't.

19  It's just not there.  The objectors are objecting to

20  provisions that don't exist.  I don't, frankly, understand

21  what they're talking about.  These provisions aren't fair.

22  The paragraphs preserve claims.  They preserve claims the

23  estate has.  Any separate claims that are brought in

24  separate adversary proceedings will be dealt with there.

25  They don't belong here in the Cash Collateral Order.  To be

1     fair, those claims have absolutely no merit.  But they'll be

2     dealt with in those cases if it's appropriate and there are

3     no -- there is no tenants in this Cash Collateral Order to

4     give NBK releases of third-party claims.

5          What there is, is a very standard, usual procedure

6     where the Trustee, sometimes it's the Debtor, has a period

7     of time to investigate and challenge the secured creditors'

8     liens.  The Trustee can, as the only party who is authorized

9     to act on behalf of the estate can bring that action and can

10    file this challenge or it can be -- or he can conclude that

11    the liens are valid, the claim is valid, the amount of the

12    debt is what it is.  That's the Trustee's job.  We have

13    faith and confidence in the process and the independence

14    that the Trustee has in this case.  That's the way that we

15    think we should proceed.  The parties have with the parties,

16    being the Trustee on the one hand and the bank on the other,

17    have agreed to that challenge process that's embodied here

18    in the Order.  That's a very, as I said, a very standard,

19    reasonable, normal provision in bankruptcy cases.  And

20    again, just to repeat myself, there is no effort here to

21    impact claims that third parties have.

22          Just briefly addressing the strike out language in

23    3B, first of all, I agree with what Mr. Shannon said with

24    respect to the fact that the (indiscernible).  I also wanted

25    to point out that Debtor's schedules include a value of the

```
 1    collateral of $18.6 million.  The debt is well in excess of
 2    that, multiple of that.  And with respect to the provisions
 3    in 3E(2), if there are objections to the Motion that has not
 4    yet been filed, but that will be filed shortly, they should
 5    be made in the context of that Motion.  They don't belong
 6    here.  They don't belong as part of the Cash Collateral
 7    Order.  And to be clear, NBK does consent to the Trustee's
 8    use of its cash collateral, but only on the terms that are
 9    provided in the Order and subject to the arguments made here
10    today, that the provisions and the additions in 3A, 3B, and
11    3B(2) should be removed and the strike out in 3B should be
12    restored.  And subject to that happening, NBK consents to
13    the Trustee's use to the cash collateral and otherwise, it
14    does not.
15         THE COURT:  All right.  Thank you, sir.  Let me
16    turn now to Mr. MacNaughton.  Mr. MacNaughton, do you have
17    anything you want to tell me?
18         MR. MACNAUGHTON:  (indiscernible) make this brief.
19    My client supports the Trustee in moving this case forward.
20    The concern that my client has is that he has been waiting
21    since before the first bankruptcy to try (indiscernible)
22    solid landlord who will be there for them with regard to
23    leasehold issues that are existing and have been existing
24    since that time.  In that regard, we'd like, at this point,
25    the Trustee to have his cash and be able to do whatever it
```

1    wants to do like the adversary resolved and we'd like no

2    further adversary to delay the process.  Other than that, we

3    have no comments.

4              THE COURT:  All right.  Thank you, Mr.

5    MacNaughton.  All right, Mr. Shannon, any other evidence you

6    might have now?

7              MR. SHANNON:  Thank you, Your Honor.  Just for the

8    purpose of this hearing, I'd like to move for the admission

9    of exhibits as Docket 171-1 through 171-15 and exhibits 171-

10   18.  That's it.  I'm sorry.  Just 171-1 through 15 and 171-

11   18.

12             THE COURT:  All right.  Let me go on the floor and

13   see if we have any objections to the admission of 171-1

14   through 171-15 and 171-18.  Mr. Baker?

15             MR. BAKER:  I'm looking back at those right now.

16   Well, Your Honor, there are concerns with certain of the

17   documents because the documents were actually executed by

18   another party that has subsequently demonstrated concerns

19   and issues with the party executing.  That's part of what's

20   in the adversary proceeding.  And so, we don't want to agree

21   to the addition of these documents at this point and time in

22   light of --

23             THE COURT:  Okay.  So, Mr. Baker, let me just cut

24   you off.  So, you object to the admission of all of the

25   documents.  Is that correct?

```
1            MR. BAKER:  No, we don't object to the admission

2    of -- the ones that we have a concern with are 6, 7, 8, 9

3    and then 18.

4            THE COURT:  All right.  Mr. Rose, do you have any

5    objection other than those raised by Mr. Baker?

6            MR. ROSE:  I have no other objections, Your Honor.

7            THE COURT:  All right.  Ms. Andresen, do you have

8    any objections other than those raised by Mr. Baker?

9            MS. ANDRESEN:  No, Your Honor.  I have no

10   (indiscernible) comments.  To help save time, if the Court

11   will permit, I'll (indiscernible) camera off and just try to

12   (indiscernible).

13           THE COURT:  Sure.  That's fine.  I'll take you

14   (indiscernible).  Thank you.  All right.  Mr. Fitzmaurice,

15   do you have any objections to -- other than the ones raised

16   by Mr. Baker?

17           MR. FITZMAURICE:  No, Your Honor.  No objections.

18           THE COURT:  Mr. MacNaughton?

19           MR. MACNAUGHTON:  No, Your Honor.  No objection.

20   And I'd like the opportunity to also have my camera  off

21   (indiscernible) the rest of this hearing.

22           THE COURT:  That's fine and (indiscernible).

23   Thank you, sir.  All right.  Then I will, based on the

24   objection by Mr. Baker, not admit 6, 7, 8, 9 or 18, but I

25   will do 171-1 through 5 and then 10 through 16.  Those are
```

1    admitted.  Mr. Shannon, you may proceed.

2              MR. SHANNON:  Thank you, Your Honor.  I'd like to

3    call Mr. Chris Murray, the Chapter 11 Trustee.

4              THE COURT:  Mr. Murray, can you raise your right

5    hand to be sworn?  Do you swear or affirm to tell the truth,

6    the whole truth and nothing but the truth, so help you God?

7              THE WITNESS:  I do.

8              THE COURT:  All right.  Thank you.  Go ahead, Mr.

9    Shannon.

10             MR. SHANNON:  And Your Honor, I'd like to share

11   the screen.

12                  EXAMINATION OF CHRISTOPHER MURRAY

13   BY MR. SHANNON:

14   Q    And for -- Mr. Murray -- I'm sorry, Mr. -- can you say

15   your name for the record?

16   A    Yeah, Christopher Murray.

17   Q    And what is your role in this case?

18   A    I'm the Chapter 11 Trustee.

19   Q    Okay, and can you see the document that I'm hopefully

20   sharing on my screen?

21   A    Yes.

22   Q    Okay.  I'm going to scroll through this document and

23   ask you a few -- if you recognize what this document is.

24   A    Yeah, I recognize this.

25   Q    Okay, and go to --

1   A    This is our revised, proposed Final Cash Collateral

2   Order with the changes from the prior version highlighted

3   and redlined.

4   Q    Thank you.  And were those changes that you just

5   referenced negotiated?

6   A    Yes.

7   Q    And how would you describe the negotiations that led to

8   those changes?

9   A    There were multiple discussions, primarily with NBK,

10   but also some interaction with the Debtor on language that

11   the parties wanted.

12   Q    Okay, and am I correct that you wanted for the Court to

13   enter the Order after the hearing today?

14   A    Yes.

15   Q    Why do you want this revised, proposed Cash Collateral

16   Order entered?

17   A    These are the best terms I was able to negotiate with

18   the bank.  I obviously need cash to continue operating the

19   estate and it's in the estate's best interest to have access

20   to this cash to continue to meet the expenses of the

21   building and the case.

22   Q    And has -- when you say, "the bank", you mean the

23   National Bank of Kuwait, correct?

24   A    I do.

25   Q    Okay, and has the bank agreed to any other language

```
 1    that what's in this redline?

 2    A    No.

 3    Q    And did, to your knowledge -- were there any attempts

 4    to ask the bank if they would agree to additional language

 5    besides this?

 6    A    Yes.

 7    Q    Okay.  Mr. Murray, I'm going to ask you, are you aware

 8    of any tax liens against the property at 2425 West Loop?

 9    A    Yes.

10    Q    And do you know if those documents -- I'm sorry.  Do

11    you know if those tax liens are accruing interest?

12    A    Yes, they are.

13    Q    And was it your understanding that those tax liens

14    would come ahead of any relief and any (indiscernible)?

15    A    Yes.

16    Q    Okay.  Do you have any reason to believe that the value

17    of the property is increasing in proportion to that accrued

18    interest?

19    A    I don't know.  No, I don't know.

20    Q    Okay.  Now, did you or (indiscernible) non-consensual

21    (indiscernible) cash collateral?  Do you believe that would

22    be a difficult fight?

23    A    Yes, probably mountable.  That it would be very

24    difficult.

25    Q    Okay, and for them to receive co-op's money to the
```

1    estate?

2    A    Yes, of course.

3    Q    Do you have any committed funding from any parties to

4    undertake that fight?

5    A    No.

6    Q    Okay.  Mr. Murray, I kind of want to switch gears here

7    a little bit.  I had you -- without going into any

8    privileged information, have you started an investigation

9    into the claims against the National Bank of Kuwait?

10   A    Yes.

11   Q    And is that investigation -- or let me rephrase that.

12   If you determine, as a result of that investigation, that

13   there are valid claims against National Bank of Kuwait, what

14   do you intend to do about that, about that determination?

15   A    It depends on what the determination is.  But if there

16   is valuable claims or offsets or claims (indiscernible)

17   subordination.  If those have merit, I'll evaluate at that

18   time and pursue them.  But I likely would if that's how the

19   estate (indiscernible).

20   Q    Thank you, Mr. Murray.

21        MR. SHANNON:  Judge, no further questions.

22        THE COURT:  Yeah, Mr. Baker?

23           CROSS-EXAMINATION OF CHRISTOPHER MURRAY

24   BY MR. BAKER:

25   Q    Mr. Murray, there have been offers from 2425 WL and Mr.

```
1    Choudhri actually helped fund this, have they not?

2    A    Yes.

3    Q    And would you be prepared to accept funding from them

4    on the same terms and conditions as you (indiscernible) for

5    NBK with regard to priorities and liens?

6    A    I don't -- I'm not sure how to answer that.  You mean,

7    if your client were the senior secured creditor and offered

8    the same terms as NBK?  I suppose, sure.  I don't care if

9    the party is on the other side.

10   Q    Okay.  So, is there -- have you sought out other

11   sources of funding at this point in time?

12   A    No.  Yes, for your client.

13   Q    And anyone else?

14   A    No.

15   Q    So, you've not made any requests to do any other type

16   of DIP lending other than what has been done in the case of

17   NBK and 2425 WL?

18   A    Right.  I have not.

19   Q    Okay.  You've not used cash collateral through the end

20   of April, correct?

21   A    Yes.

22   Q    And so, there is not any, as of today or tomorrow,

23   actually up until the last week of April, for any additional

24   approval of cash collateral, is there?

25   A    I don't -- I'm not sure I follow what you're asking.
```

1    I'm sorry.

2    Q    Well, you've got the form right now under the

3    (indiscernible) that used cash collateral through the end of

4    April, correct?

5            THE COURT:  Mr. Baker, I'm going to interrupt you

6    for just a minute.  For some reason, I disconnected

7    (indiscernible).  I disconnected from the call about a

8    minute and a half ago.  So, the last thing I heard from Mr.

9    Murray was that he hadn't paid any other or had any other

10   sources of financing past your client.  So, you need to go

11   back and ask those questions all over again because I did

12   not hear them.

13           MR. BAKER:  Okay.  I'm sorry.  Let me think.

14           THE COURT:  And I apologize.  For some reason, I

15   just dropped out of the conference call.

16           MR. BAKER:  Okay.  Well, let me go back.

17   BY MR. BAKER:

18   Q    If 2425 WL were to provide funding, would it be with

19   the same type of conditions as in the current order for NBK?

20   A    It would depend on what the offer is.  I -- this is too

21   abstract for me to respond to.

22   Q    Okay.  So, right now, as you sit today, you have the

23   ability to use cash collateral through the last week of

24   April, correct?

25   A    Yes.

1   Q   Okay.  So, there's not an immediate need today, as we

2   sit here, or next week, to have to have a cash collateral

3   usage, is there?

4   A   No, there is a need.

5   Q   There is a need?  Even though you've got approval to

6   spend through the end of April?

7   A   Is that a question?

8   Q   Yes, that's a question.

9   A   Today was the final hearing on cash collateral.  If I

10   don't get an Order, the authority expires.

11   Q   Okay, so if it's continued or if there's a subsequent

12   hearing and you have cash collateral that you could use for

13   another several weeks, there is not an immediate danger to

14   the Trustee, is there?

15   A   I suppose if there's another source of authority to use

16   cash collateral, sure.  In that hypothetical situation, yes.

17   Q   Okay.  If they were continued, are you willing to

18   negotiate with 2425 WL to get a condition for this cash

19   collateral?

20   A   A condition for the use of cash collateral?

21   Q   Or --

22   A   I don't understand your question because you're talking

23   about cash collateral that doesn't belong to your client.

24   Q   Well, okay.  Let me rephrase that.  I'm sorry.  Are you

25   willing, if this hearing is continued, the final hearing, to

1    negotiate to obtain cash for the Debtor to use for the

2    operations?

3    A    I have been and remain willing to do that and I'm still

4    waiting for your client's response to my last counter to the

5    proposal (indiscernible).  I've been waiting for weeks.

6    Q    Well, your last proposal is a different proposal than

7    what you've agreed to with NBK.  You agree to that, correct?

8    A    It's a different party with different parties.  Of

9    course it's different.

10   Q    Well, why did -- okay.  You would be open to a new loan

11   from -- that's made available to the Debtor at this point in

12   time.  Wouldn't you?  I would presume you would be.

13   A    I said that to you in answer to your client before,

14   yes.

15   Q    Okay.

16         MR. BAKER:  No further questions at this time,

17   Your Honor.

18         THE COURT:  Mr. Rose, do you have any questions?

19         MR. ROSE:  Yes.

20          CROSS-EXAMINATION OF CHRISTOPHER MURRAY

21   BY MR. ROSE:

22   Q    Mr. Murray, you're (indiscernible) Chapter 11 Trustee,

23   correct?

24   A    Yes.

25   Q    You spoke about having -- before we started your

1    investigation with NBK?  I think --

2    A    Yes.

3    Q    You used counsel to do that investigation?

4    A    Yes.

5    Q    Using counsel and looking at a $50,000 budget, can you

6    tell me, if you have to start prosecuting claims, do you

7    believe that you can go very far on a $50,000 budget?

8    A    You have a couple of questions embedded in there.

9    Q    So, okay --

10   A    Could you re-ask it?

11   Q    Okay, I'll re-ask it.  Looking at -- let's start with

12   the investigation, assume that there is an investigation to

13   be done into your loan to look at a complex banking

14   relationship that's gone on over many years in a situation

15   such as this.  (indiscernible) do that type of

16   investigation, how much of a budget would you normally

17   allocate towards that?

18   A    It depends completely on the case and the resources of

19   the case.  I've done it with zero dollars.  I've done it

20   with more than $50,000.

21   Q    Okay, and when you get into a prosecution situation?

22   A    Prosecution?  If you mean pursuing the claims, what's

23   the question there?

24   Q    Does that generally run into hundreds of thousands of

25   dollars as a rule?

1  A    It completely depends on the case and the claims in the

2  situation.  Sometimes it's zero.  (indiscernible) counsel.

3  Q    Okay.  When the opposing party is providing cash

4  collateral and a short timeline, such as 90 days, to not

5  only do an investigation, but also to sell property to a

6  small group, does that put pressure on the team to achieve

7  all of these goals within that time period?

8        MR. SHANNON:  I'm going to -- Judge, I'm going to

9  object to the relevance of that question.

10        THE COURT:  I'll overrule the objection.  I'll

11  allow the question.  Go ahead, Mr. Rose.

12  BY ROSE:

13  Q    Mr. Murray, (indiscernible) Mr. Murray, if you heard

14  the question, otherwise -- you can answer, otherwise, I'll

15  rephrase.

16  A    Yeah, I can try.  I'm not sure I agree with your

17  characterization, but as a general member I would agree

18  that, if there's less money to investigate, that puts

19  pressure.  If there's less time to investigate, that puts

20  pressure.  In the abstract, yes, that's true.  And I would

21  always like more time and more money, if I can get it.

22  Q    And in the current situation, it seems like you are on

23  a tight timeframe with limited funds.  I think we'd both

24  agree with that.

25  A    There is a time limit and there's a limit on the funds.

1    I don't -- if you're suggesting that I think it's inadequate

2    to conduct an investigation, I disagree with that.

3    Q    Okay.  I think we'll agree to disagree.  Okay.  Well,

4    thank you, Mr. Murray.

5              THE COURT:  Mr. Fitzmaurice?

6              MR. FITZMAURICE:  Thank you, Your Honor.

7                CROSS-EXAMINATION OF CHRISTOPHER MURRAY

8    BY MR. FITZMAURICE:

9    Q    Mr. Murray, as you sit here today, is there a credible

10   source of financing for the estate other than through the

11   use (indiscernible) cash collateral?

12   A    No.

13   Q    Thank you.

14             MR. FITZMAURICE:  Nothing further, Your Honor.

15             THE COURT:  All right.  Thank you.  Let me go back

16   to Mr. Shannon.

17             MR. SHANNON:  No further questions, Your Honor.

18             THE COURT:  All right.  Thank you.  Thank you, Mr.

19   Murray.  You are excused.  All right.  Mr. Shannon, do you

20   want to call on either witness?  I'm assuming not, but I

21   want to give you the opportunity.

22             MR. SHANNON:  No, Your Honor.  That's our case.

23   Thank you.

24             THE COURT:  All right.  Thank you.  Mr. Baker, Mr.

25   Rose indicated that you weren't going to call witnesses, but

1   perhaps you have a different view.  Do you have a witness

2   you want to call?

3           MR. BAKER:  No, Your Honor.

4           THE COURT:  All right.  Mr. Fitzmaurice, I'm

5   assuming you have no witnesses, correct?

6           MR. FITZMAURICE:  Correct, Your Honor.

7           THE COURT:  All right.  Mr. Shannon, I'll let you

8   go ahead and argue now.  I think everyone has rested and we

9   can go from there and I'll go around the horn.

10          MR. SHANNON:  Thank you, Your Honor.  So, as Mr.

11  Murray testified, the (indiscernible) cash collateral is

12  necessary in this case (indiscernible) is also warranted and

13  necessary.  There are past liens and, as Mr. Murray

14  testified, exist in our -- admitted exhibits are

15  (indiscernible) out of the admitted exhibits, we have

16  (indiscernible) claims, 171-11 which approves the claim of

17  the City of Houston, 171-12 is Houston Independent School

18  District, 171-13 is the Houston Community College, 171-14 is

19  by Harris County and related taxing authorities.  Ultimately

20  non-consensual use of cash collateral would be a very

21  difficult road.  As we heard Mr. Murray say, it might be a

22  problem.  And because of that, the indicated the agreement

23  that ultimately required (indiscernible) the Debtor or 2425

24  WL indicated the idea that they were -- they suggested the

25  idea of it being DIP lending from a Mr. Choudhri related

1    entity or something like that.

2         You've heard Mr. Murray say that there is no -- he

3    answered no to the question, is there another offer that's

4    on the table.  So, ultimately indicated agreement to

5    disclose here.  Of course, given these orders of cash

6    collateral to preserve would be a date.  It is -- that's

7    something to consider with respect to these proposed

8    changes.  Again, I haven't heard anything really

9    (indiscernible) again about why these proposed changes are

10   necessary, what they protect.  The idea that this is a

11   third-party release is -- I don't know how to respond to

12   that.  I mean, the Harrington/Purdue case, I -- it's not.

13   There's no releases being given.  No one is being required

14   to give up any releases indicating agreement that the cash -

15   - (indiscernible) itself where it does not require the

16   dismissal of 2425 WL's adversary proceedings for equitables

17   for admission.  (indiscernible) not any issue

18   (indiscernible) in the adversary proceedings.

19        With respect to the value of indicated collateral

20   does not exceed the amount owed and incurred, Mr.

21   Fitzmaurice referenced in his opening, and it is in evidence

22   the Debtor's schedules based on the property at -- I'm

23   sorry, I'm (indiscernible).  Based on what the property and

24   I believe it was $17.5 million, and there has been other

25   numbers thrown out, about $16 or $18.6 million.  That's what

1    the Debtor is claiming.  That's what's included in their

2    Disclosure Statement, which is 171-5.  (indiscernible) and

3    it is submitted as a statement of the Debtor.  So, as far as

4    the loophole of the strike out that's in Paragraph 3B,

5    (indiscernible) to support the value of NBK's collateral

6    does not exceed the amount.  So, it benefits the estate

7    (indiscernible).

8            With respect to Paragraph 3B(2), that's the change

9    where the Debtor and 2425 basically want to prevent the

10   sale, they want to block the Trustee from being able to hold

11   an auction and go forward with the sale until the adversary

12   proceeding, while the adversary proceedings are pending.  I

13   haven't heard -- (indiscernible) argument like that is

14   appropriate.  The property is unique, okay.  That could be

15   the case.  The right way to be able to kind of object to

16   either bidding procedures or a Final Sale Order.  It's not a

17   reason to prevent the Trustee from being able to use cash

18   collateral.

19           I think that's (indiscernible), Judge.  So -- but

20   I do think -- and the evidence supports that idea that the

21   proposed Cash Collateral Order by the Trustee at 172-2

22   should be entered.  I think it's in the best interest of the

23   estate and there is a thousand reasons to go forward with

24   that language instead of the language that is proposed by

25   the Debtor in 2425 WL.  Thank you, Your Honor.  That's all I

1 have.

2    THE COURT:  Thank you, Mr. Shannon.  Mr. Baker?

3    MR. BAKER:  Your Honor, I find it most interesting

4 that Mr. Murray did not seek out any other source of funding

5 other than NBK.  He effectively admitted that he sought no

6 other source of -- he did DIP financing.  He sought the DIP

7 financing from NBK and now has agreed to all their terms

8 without any other places to look.  That's troubling,

9 especially in light of what NBK is demanding for this.  Now,

10 when you look at the inserts in Paragraph 3A, the whole idea

11 is to preserve the status quo and it's our contention that

12 by not putting that in there, that there is an argument that

13 the adversary proceedings may not go forward and we're not

14 sure what the idea is.  But there's not a real reason not to

15 include those in there because, to the extent that it's left

16 out, the argument is that you are affecting third party

17 releases, and that is true for Paragraph 3A and 3B.  The

18 strike out, Your Honor, the only evidence (indiscernible) is

19 the Debtor's valuation in the schedules.  There is no

20 evidence.  And so, this Court is making the determination on

21 a claim and also on value with the only evidence being what

22 the Debtor has in its schedules.  That's not appropriate.

23    With regard to 3B(2), we believe that there should

24 be some of the issues with regard to the milestones and the

25 adversary proceedings that can be argued later on and it can

1    be addressed later on.  Your Honor, we would suggest that,

2    in light of the fact that there's cash collateral usage, it

3    goes on for at least another two to three weeks right now,

4    and it's already been approved, that the Trustee be required

5    to go to the other sources of financing, including potential

6    sources from the Debtor.  And allow the Debtor to have the

7    same type of liens and remedies and issues if it provides

8    new loans as NBK did.  The value (indiscernible)

9    differentiate between them other than the fact that -- well,

10   there's not.  There's not.  And so, it would be our

11   contention, Your Honor, or request, that this Order not be

12   approved unless you put the provisions in that we have

13   requested that the Trustee be required to go to seek some

14   other sources and continue this for at least another two

15   weeks.

16            THE COURT:  Mr. Baker?  Mr. Rose?

17            MR. ROSE:  Your Honor, plain and simple,

18   throughout the papers, we see a claim that the adversary

19   proceedings should be put under the Trustee.  They should be

20   divested from the current parties and placed under the

21   control of the Trustee.  This is a third-party release.

22   This is not a consensual third-party release.  It's not

23   permitted in the circuit.  I don't know what other argument

24   there has to be.  That's impermissible.  That's not allowed.

25   That's why the language that we're asking for has to be

1    inserted into this Order, and that's what (indiscernible).

2    That being the case, the adversary should be allowed to be

3    continued.  You should be overseeing the adversary so the

4    adversary can move quickly (indiscernible) NBK with the

5    protection it's asking for and the solution is simple.  It's

6    right before you if this Cash Collateral Order is entered.

7    I agree with Mr. Baker, the easier solution is to allow the

8    Debtor to go into alternative financing.  But if

9    (indiscernible) is the answer, (indiscernible) is here by

10    the solution.

11         THE COURT:  Thank you, Mr. Rose.  All right.

12    Thank you.  Mr. Fitzmaurice, let me go to you.  I think I

13    know what you're going to tell me but go ahead.

14         MR. FITZMAURICE:  Thank you, Your Honor.  So, the

15    bank agrees to the Trustee's use of cash collateral on the

16    terms that are in the proposal or as we discussed and only

17    on those terms.  You heard the Trustee testify that there is

18    no credible alternative financing proposal that's on the

19    table right now.  Your Honor may recall that in appointing

20    the Trustee, Your Honor, I'll say colloquially, gave Mr.

21    Choudhri (indiscernible) an opportunity to put his money

22    where his mouth was.  Your Honor may recall there was a

23    final DIP proposal that Mr. Choudhri was trying to make back

24    then a month ago and Your Honor said, "I'll give you the

25    opportunity to go ahead and do that."  Here we are, several

1    months later, nothing has been done.  No credible proposal

2    has been made.  Instead, it's, "Oh, well, give us some more

3    time and we'll do it in the future."  The Debtor's conduct,

4    Mr. Choudhri's conduct, the second lien lender, which is

5    also Mr. Choudhri, (indiscernible) here that the purpose is

6    to delay, to frustrate, for no other purpose.  That's what's

7    happening here, and Your Honor should not allow it.

8          There are no provisions in the Cash Collateral

9    Order that effectuate a third-party release.  I don't

10    understand what the Debtor and 2425 WL are talking about.

11    Those provisions just literally don't exist.  The adversary

12    proceedings assert the same claims.  Those claims will be

13    dealt with in the ordinary course in those cases.  It has --

14    they have no bearing and should have no involvement with

15    respect to the proposed Cash Collateral Order that is right

16    in front of Your Honor.  This issue between the Debtor and

17    National Bank of Kuwait has been going on a for a long time,

18    for far too long.  There has been a long, long, long list of

19    litigations that have been filed over and over and over

20    again asserting the same claims.  We're at a point now where

21    this matter may finally be brought to a resolution and what

22    the Debtor is trying to do, what Mr. Choudhri and his

23    affiliate entities are trying to do is to go in and

24    frustrate that.  There's no basis for it.  Thank you, Your

25    Honor.

```
 1          THE COURT:  Thank you.  All right, Mr. Shannon,
 2     I'll let you close.
 3          MR. SHANNON:  Thank you, Your Honor.  I just want
 4     to address a few points and I won't take too much time.
 5     Relative in the order that they were brought up.  The first
 6     thing that the Debtor in 2425 projected was that the Trustee
 7     just agrees to all of NBK's terms.  That's not what Mr.
 8     Murray testified earlier.  He testified that he negotiated
 9     with NBK, that he tried to get the language (indiscernible)
10     some of the language that was requested by the Debtor in
11     2425 agreed to by NBK.  That's what the (indiscernible).
12     That's the evidence that's in front of you.  I just want to
13     point out that the idea that the Debtor's adversary
14     proceeding can be prosecuted or pursued by the Debtor at
15     this point is very clearly wrong.  The Debtor can't --
16     that's estate property and the Trustee is in control of that
17     adversary proceeding.  That is an estate claim.  It's very
18     clear.  There's not even any (indiscernible).
19          Also, Judge, one other thing that was brought up
20     is that there was no reason to enter this Order.  You heard
21     the reason.  I heard what Mr. Murray said.  You've heard the
22     argument.  (indiscernible) this Order and why the Trustee
23     believes it should be entered and why it's in the best
24     interests of the estate.  (indiscernible) the idea that the
25     Chapter 11 Trustee is required to do something that he
```

1    doesn't think is a good idea because the Debtor thinks that

2    it would be, (indiscernible) why that should be the case.  I

3    mean, the Trustee does not have an actual proposal in front

4    of him that he could ask for one today or any time in the

5    future.  And (indiscernible) to try to go and get post-

6    petition financing rather than use this cash collateral and

7    again, doesn't get third party releases.  It does not

8    provide NBK (indiscernible) other than (indiscernible) for

9    its cash that it is being diminished.

10         All in all, Judge, the proposed Order at Docket

11   172-2 should be entered.  And the other two, with respect to

12   whether the sale happened or whether the auction can happen

13   if the adversary proceedings are still going on, those can

14   be addressed in that Motion, in the (indiscernible) Motion.

15   And the issues about the adversary proceedings can be dealt

16   with in those adversary proceedings.  What we're here on

17   today is this Order and it should be entered, Your Honor.

18   Thank you.

19         THE COURT:  All right.  Thank you.  All right.

20   So, let me go and make the following comments finding on the

21   record, and then you can expect that I'll enter an Order

22   probably in the next hour or two after I go back and review

23   both the adversary proceedings and that's 23-3263 and 24-

24   3043.  But let me make the first comment that this a

25   consensual Order and I'm not sure that given the fact that

1    it is a consensual Order and that the National Bank of

2    Kuwait doesn't want to agree to any of your terms, I'm not

3    sure that I have the right to amend that Order as the

4    parties are seeking.  I'll also make a finding that if I

5    don't enter an Order today, the Debtor has no access to cash

6    and I'm not sure what the alternative is.  I could send the

7    Debtor back to Square One and try and get a non-consensual

8    Order for use of cash collateral.  But if I believe Mr.

9    Murray and I do, that that probably would be near to

10   impossible that leaves the Debtor unable to operate because

11   it has no cash, and likely, the case gets converted to a

12   Chapter 7, which is not what I think anybody wants.

13          And Mr. Baker's allegations that the Debtor should

14   somehow obtain DIP financing, there's no evidence before the

15   Court that the Debtor could even obtain DIP financing given

16   the value of the debt to National Bank of Kuwait and the

17   value in the Debtor's schedules, which (indiscernible).  I

18   don't see any way that the Debtor could potentially get DIP

19   financial from anyone.  All right.

20          I think the most interesting part of the proposed

21   changes to the Order which are in 182 as to 3E(ii), I would

22   say that this Court would never sign off on any sort of

23   Order that contains any sort of impediment to any party

24   filing a 353 Motion, the course hearing the 353 Motion,

25   would not rule on any objections to a 353 Motion or

1    basically ruling on that Motion.  So, I think that, quite

2    clearly, the language in 3E(ii) is basically not something

3    that I would ever put in an Order or require.  So, even if I

4    find out (indiscernible) Order, I would not add that

5    language without reason.

6          I don't think that the argument about three party

7    releases makes any sense to me.  I don't see anything in the

8    Order, as it's currently written, that's basically linked to

9    their third-party releases, but I can't say for certain that

10   that's the case.  But I'm going to go back and review the

11   Order one more time and review the adversary proceedings.

12   But I think, as Mr. Shannon and Mr. Murray have basically

13   talked about, I don't think that there is any third-party

14   release to be concerned about and whether (indiscernible)

15   overrule that objection, but I want to make sure and I want

16   to spend some time again reviewing the Order and the

17   adversary proceedings.

18         So, that's my ruling on the record.  You can

19   expect an Order.  If I want to make additional findings of

20   fact or conclusions of law, I'll make them by separate

21   findings, other than the Order that I sign.  But I think

22   that that does what we need to do today.  I appreciate

23   everyone's time and attention and everyone appearing by

24   video, and with that, we are adjourned.  Thank you so much.

25         (Proceedings adjourned at 10:17 a.m.)

```
 1                          CERTIFICATION

 2

 3      I certify that the foregoing is a correct transcript from

 4      the electronic sound recording of the proceedings in the

 5      above-entitled matter.

 6

 7      Sonya M. Ledanski Hyde

 8

 9

10      Sonya Ledanski Hyde

11

12

13

14

15

16

17

18

19

20      Veritext Legal Solutions

21      330 Old Country Road

22      Suite 300

23      Mineola, NY 11501

24

25      Date:  April 12, 2024
```